IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2008

## STATE OF TENNESSEE v. CHRISTOPHER JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-06149       Chris Craft, Judge**

_____

**No. W2008-00454-CCA-R3-CD  - Filed February 25, 2009**

_____

A Shelby County Criminal Court jury convicted the Defendant-Appellant, Christopher Johnson (hereinafter "Johnson"), of aggravated robbery and aggravated assault. As a Range I, standard offender, Johnson received concurrent sentences of eight years, nine months for the aggravated robbery conviction and three years, three months for the aggravated assault conviction. On appeal, Johnson challenges the sufficiency of the evidence and the sentence imposed solely for the aggravated robbery conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Gerald S. Green, Memphis, Tennessee, for the appellant, Christopher Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Byron Winsett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

**Trial.** The following evidence was presented at trial. On January 28, 2006, Debra Holt was robbed at gunpoint. Holt testified that at approximately one or one-thirty in the morning, she was at home when she heard her doorbell ring. When she responded to the doorbell, she saw Shirley Brown through the glass of her wooden door. After opening the door for Brown, Johnson, Brown's boyfriend, suddenly appeared in her view. Holt was acquainted with both Johnson and Brown through her live-in boyfriend, Leon Levy. According to Holt, it was not unusual for Brown and Johnson to visit her home at that time of night. After Brown and Johnson were allowed in the home, they asked to see Levy. Holt then led them back towards the bedroom where Levy was asleep. As Holt was waking Levy, Johnson grabbed Holt around her neck and pointed a gun at Levy while he

was laying in bed. Holt stated that Johnson then forced her and Levy to lay on the floor while he proceeded to take money from Levy's pants pocket. As Johnson was dropping the money on the floor, Brown was retrieving it. Holt testified that Brown then left the house to start the car. Meanwhile, Johnson forced Holt and Levy to the kitchen and ordered them to lay on the floor until he left. When Levy heard the front door close, believing that Johnson had left the house, he then jumped up from the floor. Johnson suddenly reappeared, pointed a gun at Levy, and told him to get back on the floor.

On cross-examination, Holt testified that Levy was sleeping in a pajama top and jeans just before the robbery occurred. Holt also stated that Brown was not in any kind of distress when she arrived at her home with Johnson.

Leon Levy testified that he was acquainted with Johnson through Johnson's brother. Levy and Johnson's brother were close friends and lived in the same neighborhood as Johnson's mother. Levy identified Johnson as the person who pointed the gun in his face and took the money he had recently acquired from the sale of his car and working with his nephew. Otherwise, his testimony was largely the same as Holt's. On cross-examination, Levy admitted that he had been convicted of possession of a controlled substance with the intent to sell in 1999. Levy explained that he was convicted because he was a drug addict and not a seller. He stated that it was "the first thing [he had] ever done wrong in [his] life, that's how [he] ended up in [19]99 with a dope charge." Later, Levy retracted his statement and clarified that the 1999 drug conviction was the "last time [he] had been in trouble," and that he has "been in trouble several times." He testified that he thought that defense counsel was referring to his 1989 conviction which was actually "the first time [he] was ever in trouble." In addition, Levy admitted that he had been convicted twice for pedestrian soliciting rides, three times for simple possession of a controlled substance, once for selling a controlled substance, and once for criminal trespass between 1989 and 1999.

Shirley Brown was unavailable to testify at trial. However, the State and Johnson stipulated that Brown's testimony would have been substantially the same as her statement given to Sergeant Dale Hensley, a detective with the Memphis Police Department. Sergeant Hensley testified that he personally transcribed Brown's statement. In addition, the parties stipulated that through cross-examination, Brown would have revealed that she had been convicted of forgery in 2000.

Sergeant Hensley read the following portion of Brown's statement into evidence:[1]

> I went over to [Johnson's] house. I walked on the porch by myself
> and knocked on the door, and [Holt] answered the door. When [Holt]
> opened the door, [Johnson] came from the side and rushed in after
> me. I told [Holt] that I wanted some dope, and we walked to the
> back. I gave [Holt] the money, and she woke [Levy] up. He was

---

[1] Brown's statement, a part of the stipulated testimony, was also entered as an exhibit. Sergeant Hensley's reading of the statement as depicted in the transcript contained immaterial differences from that of the actual exhibit.

getting ready to serve me, and that's when [Johnson] grabbed [Holt] around the neck, put the gun in [Levy's] face and asked him where the money and the dope -- asked him where was the money and the dope. [Levy] gave it to him, and [Johnson] made them lay on the floor. I asked him why he was doing this. His response was, "Go crank up the car and get in it." So I went to get into the car. About five minutes later, he came and got into the car. He pushed me when he got into the car. We were arguing about him robbing my friends, and I told him I didn't want anything to do with this. He said, ". . . You don't have anything to do with it. It's all on me."

Brown also stated that "money and dope" were taken in the robbery and that she was forced to participate.

Sergeant Hensley testified that he believed Brown's story because it was similar to the victims' account of the robbery and Brown "acknowledged [her] participation in the robbery itself." On cross-examination, Sgt. Hensley reiterated that the victims' stories were substantially the same as Brown's account of the robbery; however, Brown was the only person to mention that Holt and Levy sold some drugs to Brown and Johnson.

Johnson did not present any proof at trial.

**Sentencing Hearing.** A sentencing hearing was conducted on October 26, 2007. At the hearing, the pre-sentence report was entered into evidence without objection. The report reflected Johnson's extensive alcohol and drug use beginning at the age of 10 and a prior conviction for driving on a revoked license. Additionally, from 2004 to 2007, Johnson had been employed at three different establishments for a total of seventeen months, all of which ended as a result of Johnson's resignation. Further, the report indicated that Johnson dropped out of high school in the tenth grade in 1997.

Thomas Johnson, the defendant's father, was the only witness to testify at the hearing. Johnson's father testified that Johnson maintained that he did not commit the robbery. Johnson's father also stated that Johnson had not been in any substantial trouble in the past and that his son was not known to be an unruly person.

After considering the proof, the pre-sentence report, and the arguments by counsel, the trial court stated the following:

[C]onsidering this offense occurred after June [7,] 2005, there's no presumptive sentence. It's under the quote, new law, unquote. Considering the principles of sentencing and arguments made today by you attorneys, the nature and characteristics of the conduct involved, the evidence presented, also I have considered statistical information provided by the AOC about similar offenses in this

-3-

case, armed robberies all over the state, which I've done on the web site, the defendant not having made a statement, I cannot consider his statement but will not hold his silence against him.

.  .  .  .

Going through it, any other factor consistent with the purpose of this chapter, I considered the fact that he has no felony record; however, the problem is the rest of his life[.  H]e apparently has been using cocaine and marijuana consistently for a period of years.  According to him[,] he stopped using cocaine right before this case went to trial.  Stopped using marijuana.  Drank a half a pint of whiskey every weekend.  On top of all this substance abuse[,] he wasn't working.  He'd work two or three or four months at Taco Bell or something like that and then quit his job.  And dropped out of high school in the 10th grade.  He just basically just lived a wasteful life.  And just drifted.

Coupled with the fact that I find no mitigating circumstances, I do find [an] enhancement factor.  And that's Enhancement Factor Number 1.  Obviously factors like used a weapon in the commission of the offense, I can't consider because[,] although true, they are elements of the offense.  But I find that he has a previous history of criminal behavior and criminal convictions.

Johnson was subsequently sentenced to eight years and nine months in the Tennessee Department of Correction as a Range I, standard offender for the aggravated robbery conviction.

## ANALYSIS

**I.  Sufficiency of Evidence.**  Johnson argues that the evidence was insufficient to support his conviction for aggravated robbery because two of the State's witnesses were impeached.  The State argues that the evidence was sufficient to support the jury's conclusion that Johnson committed the offense of aggravated robbery.  We agree with the State.

When a defendant challenges the sufficiency of the convicting evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) (2006) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.").  This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence.  State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, and this court will not reweigh or reevaluate the evidence. State v. Sutton, 166 S.W.3d 686, 689-90 (Tenn. 2005). This court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

The State had to prove beyond a reasonable doubt that Johnson committed the offense of aggravated robbery. Aggravated robbery is a robbery "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-402(a)(1) (2006). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2006).

Viewed in the light most favorable to the State, the proof fully supports Johnson's conviction for aggravated robbery. Three different witnesses including Brown, a participant in the robbery, presented substantially the same testimony regarding the offense. Johnson, armed with a gun, entered the bedroom where Levy was sleeping. Johnson pointed the gun at Levy forcing him from his bed to the bedroom floor. He then took money from the pants pocket Levy was wearing at the time of the robbery. Given the above evidence, a rational trier of fact could have found that Johnson committed an intentional or knowing theft from Levy's person by violence accomplished with a deadly weapon beyond a reasonable doubt. Even though Johnson argues that "the prosecution's fact witnesses" were "so doubtful, uncertain and open for discussion" to support his conviction, the jury, rather than this court, determines the weight and credibility of witness testimony. See State v. Baker, 956 S.W.2d 8, 12 (Tenn. Crim. App. 1997). Accordingly, we conclude that the evidence is sufficient to support Johnson's conviction for aggravated robbery.

**II. Sentencing**. Johnson argues that the trial court erred in enhancing his sentence by using factors that have not been found by a jury in violation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004). Specifically, Johnson contends that "his previous history of criminal behavior and criminal convictions" cannot be judicially determined. The State argues that the trial court did not abuse its discretion by enhancing Johnson's sentence by an additional nine months. We agree.

Our review of the manner of service of a sentence imposed by a trial court is de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006),

Sentencing Comm'n Cmts.

When a trial court contemplates a sentence for a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

In determining whether a defendant should be required to serve a sentence of confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A) - (C) (2006); see also Ashby, 823 S.W.2d at 169.

Prior to 2005, the Sentencing Act required that the trial court begin with a "presumptive sentence" when determining a defendant's sentence. T.C.A. § 40-35-210(c) (2003). As a result of Blakely, our legislature amended the Sentencing Act in 2005 by eradicating the requirement of a "presumptive sentence" and by providing the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence or mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1) - (2) (2006). In essence, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008).

As a Range I, standard offender, Johnson's applicable sentencing range for aggravated robbery, a Class B felony, is eight to twelve years. T.C.A. §§ 39-13-402(b), 40-35-105 ,-112(a) (2006). The trial court enhanced Johnson's sentence by an additional nine months, citing factor (1) of Tennessee Code Annotated section 40-35-114, which allows the trial court to consider for enhancement purposes the defendant's "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1) (2006). Johnson's argument, that the above enhancement violated Blakely, is simply misplaced. Johnson committed this offense on January 28, 2006, and was sentenced under the amended Sentencing Act. As stated above, the amended Sentencing Act remedied our previously faulty sentencing scheme and now permits the trial court to enhance a defendant's sentence within the applicable sentencing range so long as the trial court properly considered the sentencing principles and all relevant facts and circumstances. Here, the trial court enhanced Johnson's sentence and stated the following:

> [Johnson] has a -- he's been convicted and got twelve days for driving on revoked license, while not that serious offense. For years he had bought and used cocaine and marijuana and used drugs for years consistently, which is absolute criminal behavior. And I place [a] fairly good amount of weight on this because apparently while getting high he did nothing else of value. He didn't work. Didn't get a GED, didn't get an education, just basically did nothing with his life but get high. And now he's resorting to robbing people at gunpoint, which so many of our young men in our county have done, drugs and then getting guns and robbing people.

In our view, the record shows that the trial court properly considered the sentencing principles and all relevant facts and circumstances. Accordingly, we conclude that the trial court did not abuse its discretion by enhancing Johnson's sentence by an additional nine months.

## CONCLUSION

Based on the foregoing reasons, we conclude that the evidence was sufficient to sustain Johnson's conviction for aggravated robbery and that the trial court did not err by enhancing Johnson's sentence by nine months. Accordingly, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, Judge