# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2011

## STATE OF TENNESSEE v. ALVERTIS BOYD

**Appeal from the Criminal Court for Shelby County**
**No. 08-01138    Chris Craft, Judge**

---

**No. W2010-01513-CCA-R3-CD - Filed July 1, 2011**

---

Following a jury trial, the Defendant, Alvertis Boyd, was convicted of aggravated robbery, a Class B felony. The Defendant was sentenced as a repeat violent offender to life imprisonment without the possibility of parole. In this appeal as of right, the Defendant contends (1) that the evidence is insufficient to sustain his conviction; (2) that the trial court erred in admitting two prior convictions as impeachment evidence; and (3) that the trial court erred in sentencing him as a repeat violent offender. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, District Public Defender; Dianne M. Thackery (at trial) and Phyllis Aluko (on appeal), Assistant Public Defenders, for the appellant, Alvertis Boyd.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Neal Oldham, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On July 30, 2007, the Defendant entered a Circle K gas station in Memphis, Tennessee sometime after 10:00 p.m. The Defendant walked behind the counter where the victim, a Circle K employee, was standing and took a sandwich out of the "freezer box" and a Pepsi out of the "cooler box" before walking to the counter. Once at the counter, the Defendant "just stood there" and was "fidgety." The Defendant said, "don't be scared" and told the victim to "pay it out." The victim understood the Defendant's statement to mean that

he wanted her to open the cash register. The victim, believing that the Defendant was joking, hesitated, and the Defendant "raised his shirt up" and showed the victim a "small .380" handgun in his waistband. The victim opened the cash register and stepped back as the Defendant reached toward the register. The Defendant told the victim to lift the pan in the register, but the victim did not comply. The Defendant lifted the pan, took $60 or $70 from the register, and started to leave. As he was leaving, the Defendant knocked the sandwich and Pepsi off the counter. Realizing that he had left his cellular telephone and keys on the counter, the Defendant returned and retrieved his belongings. As he was leaving the second time, he bumped into a customer, Justin Scarbrough, who was entering the store. The victim told Mr. Scarbrough that she had been robbed, and Mr. Scarbrough ran outside and saw the Defendant jogging north down the "Highland Strip."

During the investigation of the robbery, the victim and Mr. Scarbrough were able to identify the Defendant from a photographic display. At trial, the victim admitted that she was only four feet and nine inches tall but explained that she could see the weapon in the Defendant's waistband over the counter because the floor behind the counter was higher than the floor in the store. The victim also testified that she opened the cash register because she saw that the Defendant had a weapon. She said that she was "intimidated" when she saw the Defendant's weapon.

The Defendant testified that he went to the store with the intention of robbing the victim. He said he went inside, grabbed a drink and a sandwich, and walked to the counter. Once at the counter, the victim told the Defendant the price of the items he had selected. The Defendant showed the victim how much money he had, approximately three dollars, and the victim told him that he only had enough money for the sandwich. The victim opened the register, and the Defendant reached over the counter and grabbed the money from the register. The Defendant testified that he never showed the victim a weapon and that he did not have a weapon. The Defendant admitted that he had been previously convicted of aggravated robbery and misdemeanor theft of property.

Based upon the above evidence, the jury convicted the Defendant of aggravated robbery. Following a sentencing hearing, the trial court found that the Defendant was a repeat violent offender and imposed a sentence of life imprisonment without the possibility of parole.

ANALYSIS

I. Sufficiency

-2-

The Defendant contends that the evidence only supported a conviction of theft because the State failed to establish that he used or displayed a deadly weapon to rob the victim by violence or by placing the victim in fear. The Defendant also contends that the evidence was insufficient to establish a "taking from the person" as required by the statute because he took the money from the pan in the register and not the victim, who did not fight with him or act fearful of him as he grabbed money from the register. The Defendant further contends that the evidence was insufficient to establish that he used or displayed a deadly weapon when he robbed the victim. The State responds that the evidence was sufficient to sustain the Defendant's conviction.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not re-weigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

A conviction for aggravated robbery, as relevant to this case, requires proof that the defendant committed an "intentional or knowing theft from the person of another by violence or by putting the person in fear" and that the robbery was "accomplished with a deadly weapon." Tenn. Code Ann. §§ 39-13-401 and -402(1).

In the light most favorable to the State, the evidence introduced at trial reflects that the Defendant entered the store with the intention of robbing the victim. The victim testified that the Defendant told her to open the cash register and showed her a handgun, a deadly weapon. When the victim opened the cash register, the Defendant took money from the register before fleeing the store. The victim testified that she opened the register because the Defendant had a handgun and that the handgun made her feel "intimidated." While the Defendant testified that he did not have a handgun, the jury resolved any conflicts in the

-3-

testimony presented at trial, as was their province to do. Accordingly, we conclude that the evidence is sufficient to sustain the Defendant's conviction for aggravated robbery.

## II. Prior conviction

The Defendant contends that the trial court erred by allowing the State to impeach his credibility by introducing proof of his prior convictions for aggravated robbery and theft pursuant to Rule 609 of the Tennessee Rules of Evidence and that the trial court "did not fully weigh the unfair prejudicial impact of the admission of the prior aggravated robbery conviction." The Defendant further contends that because the impeaching conviction of aggravated robbery was substantially similar to the convicting offense, it was more likely that the jury would use the impeaching conviction as propensity evidence of guilt. The State responds that the trial court complied with the procedure for weighing the probative value of the evidence against any potential for unfair prejudice. The State further responds that the Defendant has failed to establish that the trial court abused its discretion in admitting the evidence of the prior convictions when the Defendant's credibility was at issue.

Prior to trial, defense counsel argued that the aggravated robbery conviction should be excluded because it was the same charge for which the Defendant was on trial. Defense counsel also argued that the misdemeanor theft conviction should be excluded because a theft conviction is "part and parcel of an aggravated robbery" conviction. The State responded that the convictions were "germane" to the Defendant's credibility. In denying defense counsel's motion to exclude these convictions, the trial court stated,

> I will . . . allow the aggravated robbery and the theft, although they involve the same type of crime that we're on trial for they're both crimes of dishonesty and they're extremely probative on the issue of honesty or dishonesty.

The trial court further stated that if the Defendant were to testify, the court would instruct the jury that the impeaching convictions could not be used as propensity evidence but that they may only be considered to impeach the Defendant's credibility. Indeed, the trial court gave the following instruction to the jury:

> If from the proof you find that the defendant has been convicted of some prior crime or crimes[,] you can consider such only for the purpose of its effect, if any, on his credibility as a witness. It cannot be considered by you as evidence of his guilt of the offense for which he is now on trial.

Tennessee Rule of Evidence 609(a)(3) allows for the admission of a prior conviction to impeach the credibility of a defendant testifying at trial. Such an impeaching conviction

must be either "punishable by death or imprisonment in excess of one year under the law under which the witness was convicted" or "must have involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). The rule further provides,

> [i]f the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.

Tenn. R. Evid. 609(a)(3). A trial court's decision to admit a prior conviction under Rule 609 of the Tennessee Rules of Evidence will not be reversed on appeal unless the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

In determining whether an impeaching conviction should be admitted, the trial court "should first analyze the relevance the impeaching conviction has to the issue of credibility." State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). If the conviction is probative of credibility, the trial court should then "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." Neil P. Cohen et al., Tennessee Law of Evidence § 6.09[10][c] (5th ed. 2005). "When an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that since the defendant committed a similar offense, he or she is probably guilty of the offense charged." Mixon, 983 S.W.2d at 674. However, the "similarity between the impeaching conviction and the one at issue in the trial is insufficient in itself to render the impeaching one inadmissible under Rule 609." Cohen, supra § 6.09[10][c].

Here, the Defendant's prior convictions for aggravated robbery and theft were highly probative of credibility because each of the crimes involved dishonesty. See State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (holding that prior convictions of burglary and theft were particularly probative of credibility); State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997) (stating that prior convictions of burglary, robbery, and larceny were crimes of dishonesty); State v. Addison, 973 S.W.2d 260, 268 (Tenn. Crim. App. 1997) (stating that misdemeanor theft was a crime of dishonesty). While the Defendant's prior conviction of aggravated robbery was the same offense for which he was on trial, we believe that the probative value of the impeaching conviction outweighed any unfair prejudicial effect because the Defendant's credibility was at issue. See Baker, 956 S.W.2d at 15 (concluding that the trial court did not err in admitting six prior felony convictions of burglary and theft in the defendant's trial for aggravated rape and aggravated burglary); Blevins, 968 S.W.2d at 893 (concluding that the trial court did not err in admitting prior

convictions of burglary, robbery, and larceny in the defendant's trial for burglary of an automobile and vandalism). Additionally, the trial court followed the correct procedure before ultimately determining that the probative value on credibility of the impeaching convictions outweighed any unfair prejudicial effect. Accordingly, we conclude that the trial court did not err in admitting the prior convictions.

## III. Sentencing

The Defendant contends that he cannot be classified as a repeat violent offender because the State failed to try the Defendant within 180 days of his arraignment. The Defendant also contends that because the State filed a subsequent notice to seek enhanced punishment as a multiple, persistent, or career offender, the prior notice to classify the Defendant as a repeat violent offender was effectively withdrawn. The Defendant further contends that the notice to classify the Defendant as a repeat violent offender was inadequate because it did not "indicate when defense counsel was served with the notice" and because it "failed to specifically set forth the dates of the prior periods of incarceration." The State responds that a violation of the 180-day rule would not result in a dismissal. The State also responds that any error in the filing of the subsequent notice should be rendered harmless because the State filed a timely and adequate notice of its intention to seek enhanced punishment as a repeat violent offender.

In order to be classified as a repeat violent offender, a defendant must have committed a violent offense classified in subdivision (b)(1) after July 1, 1994 and have "at least two prior convictions for offenses classified in subdivision (b)(1) or (b)(2) as a violent offense." Tenn. Code Ann. § 40-35-120(a). The Defendant committed the offense of aggravated robbery on July 30, 2007. The Defendant had prior convictions of aggravated robbery and attempted second degree murder. The Defendant's current conviction and his prior convictions were designated in section 40-35-120(b)(1).

In addition to the above requirements, the Defendant must have also "served two (2) separate periods of incarceration for the commission of at least two (2) of the predicate offenses designated in subdivision (b)(1) or (b)(2) before committing an offense designated in subdivision (b)(1)." Tenn. Code Ann. § 40-35-120(e)(1)(A). The documents submitted at the sentencing hearing reflect that the offense date for the Defendant's prior conviction of attempted second degree murder was October 16, 1990. The Defendant was released from the Tennessee Department of Correction on June 17, 2000, and the Defendant subsequently committed the offense of aggravated robbery on December 17, 2001. The Defendant was released to parole on February 26, 2007, and while on parole, the Defendant committed the instant offense on July 30, 2007. Even though the Defendant was on parole when he committed the instant offense, the Defendant had effectively served two separate periods of

incarceration prior to the commission of the convicting offense.  See Tenn. Code Ann. § 40-35-120(e)(2) (providing that violent offenses committed while on supervised release into the community shall be considered as a separate period of incarceration).

Section 40-35-120 provides time limits and notice requirements when the State seeks to classify a defendant as a repeat violent offender.  This section provides, in pertinent part, that "[a] charge as a repeat violent offender shall be tried within one hundred-eighty (180) days of the arraignment on the indictment."  Tenn. Code Ann. § 40-35-120(i)(1)(A).  The State is also required to "file a statement with the court and the defense counsel within forty-five (45) days of the arraignment . . . that the defendant is a repeat violent offender."  Tenn. Code Ann. § 40-35-120(i)(2).  However, this section also provides that "[i]f the notice is not filed within forty-five (45) days of the arraignment, the defendant shall be granted a continuance so that the defendant will have forty-five (45) days between receipt of notice and trial."  Tenn. Code Ann. § 40-35-120(i)(2).

We acknowledge that the Defendant was not tried within 180 days of the arraignment on the indictment.  However, the delay of the Defendant's trial would not change the Defendant's classification as a repeat violent offender because "[a] continuance may be granted to any party, including the court, for good cause shown."  Tenn. Code Ann. § 40-35-120(i)(1)(B).  This court has concluded that a defendant's violent offender classification should not be altered when the defendant was not tried within 180 days of the arraignment on the indictment.  State v. Thompson, 36 S.W.3d 102, 117 (Tenn. Crim. App. 2000).  In Thompson, this court stated, "even though none of the enumerated exceptions to the 180 day requirement applied and no order of continuance was sought or granted," relief was not warranted when the defendant failed to establish prejudice.  Id.  This court compared the 180-day requirement with the 150-day deadline in the Class X felony law.  Id. at 116-17.  This court concluded that in both situations, the "[c]onstitutional provisions for speedy trial and due process are sufficient to protect the interests of defendants in seeing that criminal proceedings are expedited."  Id. at 117.  Additionally, the Defendant has not offered any authority in support of his assertion that failure to comply with the 180-day time limit prohibits the trial court from classifying the Defendant as a repeat violent offender.  Id.

While the State and the trial court failed to comply with the 180-day requirement, the State filed their notice that the Defendant was a repeat violent offender pursuant to section 40-35-120 within 45 days of arraignment on the indictment.  However, on the day of trial, the State filed a subsequent notice in which it sought enhanced punishment pursuant to Tennessee Code Annotated section 40-35-202.  At the sentencing hearing, defense counsel did not object to the classification of the Defendant as a repeat violent offender or allege that the State did not give proper notice.  Defense counsel stated,

Judge, once they file under this, there's not much else to say to be truthful. I understand what the law is, and what is actually required is not at the court's discretion, so I just have to leave it at that.

In fact, there was no mention of the subsequent notice at the sentencing hearing. Additionally, the Defendant has failed to establish that he was prejudiced by the filing of the subsequent notice or that he believed the State was no longer seeking the trial court's classification of him as a repeat violent offender. Accordingly, we believe that any error in the filing of the subsequent notice was harmless.

We believe the Defendant's assertion that the 45-day notice was inadequate because it did not reflect whether defense counsel had been notified of the State's intent to seek enhanced punishment pursuant to this section is without merit. Any failure to notify defense counsel would merely result in the grant of a continuance. See Tenn. Code Ann. § 40-35-120(i)(2). Moreover, there is no evidence that the Defendant did not receive notice within 45 days of the arraignment, nor has the Defendant alleged that he was prejudiced as a result of lack of notice. See Thompson, 36 S.W.3d at 116 (concluding that failure to comply with the 45-day notice requirement did not preclude the State from seeking a repeat violent offender classification when the Defendant failed to establish that he was prejudiced as a result of the untimely notice). According to the record, the notice in this case was filed in the trial court within 45 days of the indictment.

The Defendant is correct that the initial 45-day notice did not set forth the dates of the prior periods of incarceration as is required by statute. See Tenn. Code Ann. § 40-35-120(i)(2) (providing that the statement must "set forth the dates of the prior periods of incarceration, as well as the nature of the prior conviction offenses"). However, the Defendant did not raise this issue at any time before appeal. "Where an ambiguity or contradiction appears on the face of the notice, [the] defendant has a duty to inquire further." State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990). "[W]hen the State has substantially complied with [section 40-35-202(a)], an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." Id. In Adams, the court held that prejudice was established when a notice to seek enhanced punishment pursuant to Tennessee Code Annotated section 40-35-202 "dealt exclusively with matters relevant to another phase of sentencing." Id.

However, in this case, the State substantially complied with the notice requirements. The notice complained of advised the Defendant that the State sought classification of the Defendant as a repeat violent offender, referenced the appropriate statute, and listed the Defendant's qualifying prior convictions, indictment numbers, and conviction dates. The Defendant had enough information to inquire further and determine how to proceed. The

Defendant did not complain that the notice was inadequate or misleading until after the trial and the sentencing hearing. Additionally, the Defendant did not assert that he was prejudiced by a lack of information in the notice or that he had not served two separate periods of incarceration. Indeed, the State proved at the sentencing hearing that the Defendant had served two separate periods of incarceration prior to committing the instant offense. Accordingly, we conclude that the error in the notice was harmless and that the trial court did not err in classifying the Defendant as a repeat violent offender.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE