IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1996 SESSION



FILED

**March 26, 2008**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 02-C-01-9511-CC-00347 |
| | ) | |
| | ) | Tipton County |
| v. | ) | |
| | ) | Joseph H. Walker, III, Judge |
| | ) | |
| | ) | (Aggravated Burglary and |
| | ) | Aggravated Rape) |
| BOBBY BAKER, | ) | |
| | ) | |
| APPELLANT. | ) | |

FOR THE APPELLANT:

J. Thomas Caldwell
Attorney at Law
114 Jefferson Street
Ripley, TN 38063

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Ellen H. Pollack
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Elizabeth T. Rice
District Attorney General
302 Market Street
Somerville, TN 38068

James Walter Freeland, Jr.
Assistant District Attorney General
302 Market Street
Somerville, TN 38068

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

**O P I N I O N**

The appellant, Bobby Baker, was convicted of aggravated rape, a Class A felony, and aggravated burglary, a Class C felony, by a jury of his peers. The trial court, finding that the appellant was a multiple offender in the aggravated rape case, imposed a Range II sentence consisting of confinement for thirty-five (35) years in the Department of Correction. The trial court further found that the appellant was a persistent offender in the aggravated burglary case and imposed a Range III sentence consisting of confinement for twelve (12) years in the Department of Correction. The sentences are to be served consecutively. The effective sentence imposed was confinement for forty-seven (47) years in the Department of Correction. The appellant presents eleven issues for review. After a thorough review of the record, the briefs of the parties, and the authorities which govern the issues raised by the appellant, it is the opinion of this Court that the judgment of the trial court should be affirmed.

On the evening of August 9, 1994, the victim, Angela Thompson, entertained friends at her residence. Her friends left the residence to visit a mutual friend at approximately 2:15 a.m. on the morning of August 10, 1994. The friends were to return to Thompson's residence to spend the night. Ms. Thompson examined the door and the windows to make sure they were locked.

The victim's two children, ages eleven months and two, and a friend's ten-year-old child were asleep in the residence. The victim went to bed and fell asleep.

The appellant opened a window in the back bedroom of Thompson's residence and entered the victim's residence between 2:30 a.m. and 3:00 a.m. He disabled the telephone, entered the victim's bedroom, and threw a lit cigarette on the floor. He used his foot to extinguish the cigarette.

The victim felt the presence of someone leaning over her and awoke. The appellant was leaning over the victim. She asked: "Who are you?" The appellant did not respond. He then placed a knife against the throat of the victim. He told her to cooperate with him or he would kill her. The appellant fondled the victim, performed cunnilingus upon her, and vaginally penetrated her with his sexual organ. Once the appellant ejaculated, he "jumped up and [ran] out of the room." He exited the residence through the back door.

2

The investigating officers found a footprint in the rear bedroom. Two officers went to the rear of the residence and discovered a path of footprints leading to the window and from the rear door. The officers could see the tracks due to a heavy dew that was on the ground. The footprints leading to the back window revealed that the appellant was walking at a slow gait, while the footprints leading away from the window established that the appellant was running away from the residence. One of the officers was a certified tracking instructor. The officers began tracking the footprints. They tracked the footprints to a residence occupied by the appellant's aunt and uncle.

An independent witness, who knew the appellant, saw him in the neighborhood on the morning in question. A friend of the victim saw the appellant running from the Thompson residence. The appellant was not wearing a shirt. A witness also saw the appellant "knocking on the window trying to tell somebody to let him in" at a relative's residence. The appellant's second cousin came to the door and permitted him to enter. The appellant left before his relatives arose later that morning.

The investigating officers obtained a search warrant to obtain blood samples from the appellant and to obtain additional evidence from his person. Before the officers took the appellant to the hospital, they gave him the Miranda warnings. The appellant told one of the officers: "I'm not denying having sex with the girl, but [s]he consented to it."

The vaginal swabs tested positive for spermatozoal. DNA testing connected the appellant to the crimes in question. The known blood sample of the appellant matched the fluids taken from the victim's vagina. The expert stated the chance of a non-family member matching the appellant's blood traits was one in 236,000,000.

The appellant testified in support of his defense. He claimed he had made arrangements with the victim to have sexual relations with her for $40. He returned to the residence, gave the victim $40, and they engaged in numerous sexual activities. When he was leaving, he took the $40. He claimed the victim became angry because he took the money and claimed she was raped.

I.

The appellant contends the evidence is insufficient, as a matter of law, to support a finding that he was guilty of aggravated rape and aggravated burglary beyond a reasonable doubt. He argues the state failed to prove there was a "forced entry" into the residence and he possessed a knife when he committed the offenses.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence, State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a

matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

The only issue the trier of fact was required to resolve was the credibility of the witnesses. The appellant presented evidence that he paid the victim to engage in sexual activities with him. The state presented evidence that someone entered through a back bedroom window which was locked when the victim went to bed, the appellant forced the victim to have sexual relations with him by placing the victim in fear of her life with a knife, and the appellant left the residence through the back door, which also was locked when the victim went to bed. The victim felt the blade of the knife against her throat. She also felt the knife when she attempted to take it away from the appellant while he was performing cunnilingus on her. The jury accredited the testimony of the victim. It is obvious the jury did not believe the testimony given by the appellant.

The evidence given by the victim was sufficient to establish the appellant was armed with a knife when he raped her. Burglary does not require a "forced entry" as the appellant argues. In the context of this case, aggravated burglary is committed when a person, without the effective consent of the property owner,[1] enters a private residence[2] with the intent to commit a felony in the residence. Tenn. Code Ann. § 39-14-403. Thus, an entry through an open window or an open door without the consent of the victim constitutes an "entry" within the statute.

This Court concludes the evidence contained in the record was clearly sufficient to support a finding by a rational trier of fact that the appellant was guilty of both aggravated rape and aggravated burglary beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## II.

---

[1]The term "owner" is defined as "a person in lawful possession of property, whether the possession is actual or constructive." Tenn. Code Ann. § 39-14-401(3). The victim leased the duplex in question. Consequently, she was an "owner" within the meaning of the statute.

[2]The term "habitation" is defined as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodations of persons." Tenn. Code Ann. § 39-14-401(1)(A).

5

The appellant contends the trial court did not perform its function as the thirteenth juror. He argues the trial court should have granted him a new trial because the evidence contained in the record preponderated against the guilty verdicts of the jury and in favor of his innocence.

The trial court performed its function as thirteenth juror. The court stated at the conclusion of the motion for a new trial:

> The jury in this matter found that the defendant unlawfully entered the home of the victim in the early morning hours; that he, while armed with a weapon, raped the victim in her own bedroom; that he threatened to kill her and her young child who was in the bed with her if she was not [quiet], submit to a sexual assault. The Court finds and found at the trial, or at sentencing, that the -- as thirteenth juror that the -- approved of the finding of the jury.

Since the trial court views the evidence as a thirteenth juror to determine where the preponderance lies, this Court cannot review the decision of the court as the thirteenth juror. State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993).

### III.

The investigating officers obtained a search warrant to obtain "a quantity of blood, saliva and pubic and head hairs from the person of Bobby Rydale Baker . . . suitable for testing." The affidavit given by an officer outlined what had been discovered during the course of the investigation in minute detail. The appellant moved to suppress the evidence obtained from his body. The trial court denied the motion. The samples taken from the appellant were used to establish his identity as the perpetrator.

The appellant contends the trial court committed error of prejudicial dimensions by refusing to suppress this evidence. He argues the affidavit supporting the issuance of the warrant does not state probable cause, there is no statement contained in the warrant which establishes the veracity of the informants as required by State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989), and he was entitled to an adversarial hearing when the officers sought the warrant. He further argues the affidavit fails to state (a) the reason for obtaining the samples from his body, namely, the samples will be compared to other evidence, and

(b) there is other evidence for comparison.

The appellant was not entitled to an adversarial determination of probable cause for the issuance of the search warrant. His reliance upon the authority cited is misplaced. It is clear the investigating officers had two procedural methods for obtaining the samples from the appellant. First, the officers could obtain a search warrant authorizing them to obtain the samples from the appellant's body. Second, the officers could have enlisted the assistance of the District Attorney General's Office, filed a motion in the trial court seeking the entry of an order permitting the officers to obtain the samples, and both parties could have litigated the issues at an adversarial evidentiary hearing. The officers opted to obtain a search warrant. The appellant was not entitled to be present or litigate the issue of whether the officers had probable cause to support the issuance of the warrant prior to the warrant being issued.

The affidavit given to support the issuance of the search warrant meets the requirements of the United States Constitution, the Tennessee Constitution, and the common law rules created by the appellate courts of this state. The affidavit recites in minuscule detail the nature of the crimes the appellant is alleged to have committed, the steps taken during the course of the investigation, and the information received from the independent witnesses having knowledge of the facts. The affidavit was clearly sufficient to justify the issuance of the search warrant.

The appellant's contention that the information contained in the affidavit was stale defies logic, technology, and common sense. It does not take an expert to conclude that a person's blood, saliva, and hair do not become stale. As long as that person is alive, he or she will have the same blood type, the same saliva content, and the same hair texture. In short, when these items are sought, they will always be fresh as opposed to stale.

The appellant's reliance upon Jacumin is misplaced. The factual situation in this case is distinguishable. In Jacumin the officers received information from citizens who were involved in the criminal community. Here, the witnesses, law-abiding citizens, saw what happened and related the events they witnessed to the police. They did not participate in the crimes committed by the appellant, and they were not members of the criminal community in Tipton County. Consequently, the two-prong test approved in

7

Jacumin was not applicable. State v. Melson, 638 S.W.2d 342, 355-56 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); State v. Sheila Elaine Thomas, Maury County No. 01-C-01-9304-CC-00131 (Tenn. Crim. App., Nashville, February 23, 1996).

The affidavit states the officers were seeking "a quantity of blood, saliva and pubic and head hair from the person of Bobby Rydale Baker . . . suitable for testing." It also states that the victim had been raped. Common sense tells us the officers wanted these samples to compare them to samples taken from the rape victim. Legions of cases state affidavits are to be viewed in a common sense rather than technical manner. Why would the officers want to waste their time and obtain samples from the appellant if there was no physical evidence to compare with the samples?

If the appellant also challenges the statement he gave to the police, this Court finds the ruling of the trial court was correct. The only evidence contained in the record was given by the police officer who took the appellant to the hospital to obtain the samples pursuant to the search warrant. The officer advised the appellant of the Miranda warnings before transporting him, but the officer did not attempt to question him. The appellant volunteered the statement attributed to him. It was clearly admissible as substantive evidence at the trial.

This issue is without merit.

## IV.

The appellant has a lengthy record of prior convictions. The state gave notice it intended to use certain prior convictions to impeach the appellant if he testified in support of his defense. The appellant moved the trial court in limine to determine the admissibility of the appellant's prior convictions for burglary and theft. The trial court ruled the state could not use these convictions as part of its case in chief, but, if the appellant took the stand and testified in support of his defense, the state could use the offenses to impeach him.

During the trial, the appellant took the stand and testified in support of his defense. The state used six prior felonies to impeach the appellant: two prior convictions for burglary second degree, two prior convictions for burglary, and two prior convictions for theft over $500. The appellant was convicted of these offenses between 1986 and 1992.

The State of Tennessee may use a prior conviction to impeach an accused if the conviction meets the criteria established by Rule 609, Tennessee Rules of Evidence. According to this rule, a prior adult conviction may be used to impeach the testimony of an accused if (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one (1) year or a misdemeanor involving dishonesty or false statement, (b) less than ten years have elapsed between the date the accused was released from confinement and the commencement of the prosecution, (c) the state gives reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial, and (d) the trial court finds the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect. See State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App.), per. app. denied (Tenn. 1992).

In this case, the first three requirements, (a) through (c), have been satisfied. Thus, the only issue which this Court must resolve is whether the trial court was correct in finding the probative value of the felonies outweighed their unfair prejudicial effect because the felonies were similar in nature to the offenses charged in the indictment.

In determining whether the probative value of a felony used to impeach an accused outweighs its unfair prejudicial effect on the issues to be resolved by the jury, a trial court

should (a) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction," and (b) "analyze the relevance the impeaching conviction has to the issue of credibility."  N. Cohen, D. Paine, and S. Sheppeard, Tennessee Law of Evidence § 609.9 at p. 376 (3rd ed. 1995); see Farmer, 841 S.W.2d at 839.  When this analysis is made in this case, it is clear the trial court did not abuse its discretion in ruling the six felonies could be used to impeach the appellant if he opted to testify in support of his defense.

The mere fact a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness.  See State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).  The appellate courts of this state have held that the offenses of burglary and theft are "highly probative of credibility,"  State v. Crank, 721 S.W.2d 264, 266-67 (Tenn. Crim. App.), per. app. denied (Tenn. 1986), because these crimes involve dishonesty.  State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App.), per. app. denied (Tenn. 1993); Miller, 737 S.W.2d at 560; Crank, 721 S.W.2d at 266-67.  Thus, the appellate courts of this state have held that convictions for these felonies may be used to impeach an accused being tried for one or more of these offenses absent circumstances which require a different result.  Tune, 872 S.W.2d at 927 (burglary conviction admissible to impeach accused in a prosecution for burglary);  Miller, 737 S.W.2d at 560 (burglary conviction admissible to impeach accused in a prosecution for burglary); State v. Cole, 665 S.W.2d 407, 410 (Tenn. Crim. App. 1983), per. app. denied (Tenn. 1984)(burglary conviction admissible to impeach an accused in a prosecution for burglary); Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979)(burglary conviction admissible to impeach an accused in a prosecution for burglary); Price v. State, 589 S.W.2d 929, 931-32 (Tenn. Crim. App.), cert. denied (Tenn. 1979)(convictions for burglary and grand larceny admissible to impeach an accused in a prosecution for burglary).

The appellant's reliance upon State v. Farmer is misplaced.  In Farmer, a conviction for assault with intent to commit manslaughter was used to impeach the accused in a conviction for murder in the second degree.  This Court held the prejudicial effect of

introducing the prior conviction outweighed the probative value of the conviction. As this Court said in <u>Farmer</u>, the probative value of the conviction was "slight or nonexistent." 841 S.W.2d at 840. In this case, the convictions are "particularly probative regarding credibility." <u>Tune</u>, 872 S.W.2d at 927.

This issue is without merit.

## V.

The appellant contends the trial court committed error of prejudicial dimensions by refusing to grant him a new trial. He argues a juror, Jacqueline Dye, had knowledge the appellant had previous "run-ins with the law," but she failed to disclose this information when questioned during voir dire examination. When asked if she knew the appellant, she told counsel: "I don't know him. I know him, but I don't know him -- that case and everything. I don't know what happened in that case."

Ms. Dye was called as a witness during the hearing on the motion for new trial. Although the record reflects all of the prospective jurors were questioned about the matter in controversy, she denied being asked if she knew the appellant. The following colloquy occurred during the motion for a new trial:

> Q. Did you know that Bobby Baker had been in trouble with the law previously?
>
> A. It'd been a long time ago, 'cause I don't--
>
> Q. But you did know that?
>
> A. Yeah, but I don't know nothing like that, the case what I was on.
>
> Q. So, you knew that he had run-ins with the law in a previous--
>
> A. Yes, I did.
>
> Q. --some previous way?
>
> A. All I know in the newspaper, that's all I read, the newspaper.
>
> * * * *
>
> Q. Okay. And when you went back to the jury room did you tell these other jurors that you knew Bobby Brown -- Bobby Baker?
>
> A. They asked me, and I told them, "Yeah, I know him a long time ago." And I don't go nowhere.

11

Q. Did you tell them that you had read in the paper that he'd been in previous trouble?

A. No, I don't.

Q. Okay. But you had that in your -- in you own background and in you own knowledge?

A. Right.

Q. You think that had an influence on your determination--

A. No.

Q. --of his guilt in this case?

A. No, it don't.

Q. Do you think that it may have been that he would have had to remove his -- his right to presumption of innocence by proof because of what you already knew about him?

A. I don't know -- I didn't know nothing about that rape case at all till when I got on the jury duty. That's about the only time that I know something about it.

Q. You don't think that this fact -- the fact that you knew Bobby Baker and knew that he had previous trouble with the law would have had an impact on how you voted in this case?

A. No, it don't.

When a juror's apparent misrepresentation or concealment of information during voir dire examination is challenged during a hearing incident to the motion for a new trial, the accused, as the moving party, has the burden of showing he or she incurred actual bias or prejudice as a result of the failure to reveal the information. State v. Bigbee, 885 S.W.2d 797, 805 (Tenn. 1994); State v. Caughron, 855 S.W.2d 526, 539 (Tenn.), cert. denied., _____ U.S. _____, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993). In this case, the appellant admits the record is devoid of evidence that the knowledge possessed by Ms. Dye resulted in either bias or prejudice. He candidly admits in his brief Ms. Dye did not let the information she possessed influence her decision as to the appellant's guilt; and she did not reveal this information to other jurors. Moreover, all of the jurors were made aware of the appellant's prior convictions. The State of Tennessee used these convictions to impeach the appellant as a witness.

This issue is without merit.

## VI.

The appellant contends the sentences imposed are excessive, the sentences should be served concurrently, the trial court erred in refusing to reduce the sentences, and the trial court erroneously ruled the presentence officer could relate hearsay information concerning his prior parole violations. This Court finds the sentences are appropriate and should be served consecutively.

## A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1994). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210;

13

State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the appellant has the burden of illustrating the sentences imposed by the trial court are erroneous.

## B.

The appellant's contention concerning the testimony of the presentence officer has been waived. The appellant has failed to cite any authority to support this issue. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); State v. Brothers, 828 S.W.2d 414, 416 (Tenn. Crim. App. 1991), per. app. denied (Tenn. 1992).

This Court parenthetically notes that "reliable hearsay. . .may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted." Tenn. Code Ann. § 40-35-209(b). State v. Richardson, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994); State v. Wagner, 753 S.W.2d 145, 146 (Tenn. Crim. App.), per. app. denied (Tenn. 1988). The trial court is also required to consider the presentence report before imposing sentence. Tenn. Code Ann. § 40-35-210(b)(2). Moreover, the Tennessee Criminal Sentencing Reform Act of 1989 contemplates that much of the information contained in a presentence report will be hearsay. However, the information is reliable because it is based upon the presentence officer's research of the records, contact with relevant agencies, and the gathering of information which is required to be included in a presentence report. See Tenn. Code Ann. § 40-35-205.

## C.

The trial court considered several enhancement factors when imposing the sentences in question. The court found the following factors were supported by the evidence: (a) the crime was committed to satisfy the desire for pleasure and/or excitement,

14

Tenn. Code Ann. § 40-35-114(7), (b) the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8), (c) the appellant employed a dangerous weapon when committing the offenses, Tenn. Code Ann. § 40-35-114(9), (d) the appellant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10), (e) the appellant was on parole when the offenses were committed, Tenn. Code Ann. § 40-35-114(13), and (f) the appellant committed the offenses under circumstances in which the potential for bodily injury to the victim was great, Tenn. Code Ann. § 40-35-114(16). The trial court did not specify which factors were used to enhance the individual crimes. The appellant contends the trial court committed error of prejudicial dimensions by using some of these factors to enhance his sentences within the appropriate range.

The appellant argues the trial court should not have used factor (9) because the use of the knife was an element of aggravated rape. This Court agrees factor (9) cannot be used to enhance the sentence in the aggravated rape case because the use of the weapon is an element of the offense. However, this factor was properly used to enhance the aggravated burglary conviction. The burglary was elevated from burglary to aggravated burglary because he broke into and entered a dwelling where people lived. The use of the knife was not an element of aggravated burglary.

Next, the appellant argues the trial court should not have used enhancement factor (8) to enhance his sentences. He argues the trial court used his prior parole violations to support both factor (8) and factor (13). This Court finds the trial court properly applied both factors. The two prior revocations of parole were used to enhance the appellant's sentence pursuant to factor (8). The fact the appellant was on parole when he committed these offenses was used to enhance the sentences pursuant to factor (13). As the appellant argues, the fact the appellant's last violation of parole ended in the parole being revoked after these offenses were committed could not be used to establish factor (8). Moreover, the last revocation of parole was not necessary to establish factor (8) since there were two violations of parole which occurred prior to the commission of the offenses in question.

15

Although there are cases holding that factor (16) should not be applied in an aggravated rape case, the Supreme Court held in State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996), factor (16) may be used to enhance a sentence within the appropriate range in aggravated rape cases.  In Kissinger, the act was the anal penetration of a young boy. The court held an act of anal intercourse with a young boy has the potential for bodily injury.  However, the court said it should be accorded little weight.  Here, there was vaginal intercourse with a normal female adult.  Besides the conduct which caused the offense to be elevated to aggravated rape, there is nothing in the record to establish that the potential for bodily injury was great within the meaning of factor (16).

Although factor (9) should not have been used to enhance the appellant's sentence in the aggravated rape case, and factor (16) should not have been used to enhance either sentence, this does not entitle the appellant to a reduction in either sentence.  See State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).  The remaining factors are entitled to great weight, namely, the commission of this offense to gratify pleasure and excitement, the prior revocations of parole, the lack of hesitation to commit a crime when the risk to an infant eleven months of age and in the bed with his mother was high, and the commission of these offenses while on parole.

The trial court ordered the sentences in this case to be served consecutively to the sentences for which the appellant was on parole when he committed these offenses.  This was mandated by Tenn. R. Crim. P. 32(c).  This rule makes it mandatory that such sentences be served consecutively.  However, the trial court also ordered the sentences

for aggravated rape and aggravated burglary to be served consecutively as well.  The trial court found the appellant was a professional criminal and a dangerous offender.  Tenn. Code Ann. §§ 40-35-115(b)(1) and (b)(4).

The record is devoid of evidence which establishes the appellant was a professional criminal other than his record of convictions.  However, the record does support a finding that the appellant has an extensive record of criminal activity.  Tenn. Code Ann. § 40-35-115(b)(2).  Six felony convictions were used to impeach him when he testified during the trial.  He admitted he was convicted of all six felonies.  These crimes were committed over a relatively short period of time.

The trial court properly found the appellant is a dangerous offender.  In this case, the appellant entered the residence armed with a knife.  There were three children asleep besides the victim.  He placed the knife against the victim's throat, and he threatened to kill her and her infant son, who was asleep in his mother's bed.  The appellant raped the victim in her bed while her son lay asleep beside her.  Thus, he committed dangerous offenses.

The lengthy sentences imposed by the trial court were appropriate.  These sentences "reasonably relate to the severity of the offense[s] committed" by the appellant.  State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).  Also, these sentences are "necessary to protect the public against further criminal conduct" at the hands of the appellant.  Id.  The appellant has been sentenced to serve a prison term on several occasions.  He was released on parole on three occasions, and he violated all of the paroles.   It is obvious the appellant is beyond the stage of rehabilitation.  If released after serving a shorter sentence, there is every indication the appellant will continue to engage in criminal conduct following his release.  The public needs to be protected from the appellant's propensity to commit crimes.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

17

_____
GARY R. WADE, JUDGE


_____
WILLIAM M. BARKER, JUDGE