# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 21, 2011

## STATE OF TENNESSEE v. QUINCY BRYAN BANKS

**Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1079      Seth W. Norman, Judge**

---

**No. M2010-02653-CCA-R3-CD - Filed August 17, 2011**

---

The Defendant, Quincy Bryan Banks, was convicted by a Davidson County Criminal Court jury of two counts of aggravated rape and one count of especially aggravated kidnapping, class A felonies. He was sentenced as a violent offender to twenty years' confinement for each conviction. The kidnapping conviction was ordered to be served consecutively to the rape convictions, for an effective forty-year sentence. On appeal, the Defendant contends that the trial court erred by ordering consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Quincy Bryan Banks.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This is an appeal of a resentencing. The facts of this case were stated by this court on direct appeal:

> In November 2004, [the victim] was employed as a "roving manager" with The Mattress Firm, a retail establishment with stores in the Nashville area. As roving manager, [the victim] would substitute for store employees at different stores on different days. On November 29, [the victim] was assigned

to the store in Belle Meade. At approximately 6:00 p.m. that evening, the Appellant entered the store. [The victim] was alone in the office area of the store, speaking on the telephone with Connie Rademacher, an employee at another store location. [The victim] informed Rademacher that she "didn't have good feelings about [the Appellant]," and Rademacher suggested that she maintain an open connection by laying the phone down without hanging up, which [the victim] did. [The victim] then greeted the Appellant, who informed her that he needed to purchase a mattress for his nephew. The two proceeded to the "value area" of the store, and [the victim] showed him some twin-sized mattresses. She returned to the office area to check the price on a floor model mattress, and the Appellant followed. At this point, the Appellant grabbed [the victim] from behind and held a knife to her throat, telling her he would kill her if she did not comply with his demands.

The Appellant then proceeded to throw [the victim] to the floor and ordered her to remove her pants. The victim tried to stall the Appellant and began speaking loudly, hoping that Rademacher would hear her through the open phone connection and summon help. Upon realizing that they were visible from the street because of the large glass windows, the Appellant questioned the victim about rooms in the back of the store. Upon seeing the open door to a small storage area, the Appellant again held the knife to [the victim's] back and forced her into the room at the rear of the store. Once inside the room, the Appellant pulled down his pants, grabbed the victim, and forced her to perform oral sex on him. Afterwards, he forced her to lie down on the floor and removed her pants, again threatening to kill her if she resisted. The Appellant then proceeded to rape the victim both vaginally and anally. During this time, the knife either remained in the Appellant's hand or was placed on the floor nearby.

Rademacher, becoming concerned after hearing [the victim] say, "Give me back my glasses" and "I will go with you," called her district manager, who called 911. Officer

-2-

Robert Peterson responded to the scene to investigate a possible robbery. Upon entering the building, he noticed a pair of red shoes and a pair of eyeglasses on the floor in the office area, but he did not see anyone in the store. He proceeded to the rear of the store, where he heard a "commotion" and some movement. Peterson knocked on the door and heard a female ask for help, followed by a male voice saying that nothing was going on and to go away. Peterson then pushed open the door and observed the Appellant with no shirt on and his jeans partially unzipped and hanging from his hips. [The victim] was positioned on the floor wearing a red jacket and nothing else. Peterson drew his weapon and ordered the Appellant to kneel on the floor. Peterson observed a knife located directly in front of the Appellant when he knelt. The Appellant was then handcuffed and taken into custody.

Sergeant Twana Chick responded to the scene and spoke with [the victim], whom she described as "hysterical, extremely, extremely upset, just hardly able to answer questions." The victim was taken to Nashville General Hospital, where a rape kit examination was conducted. The examination revealed red marks or scratches on the victim's neck, back, arm, and thigh, as well as two small bruises on her abdomen. Moreover, stool was found in her vagina, which was consistent with her report of anal rape followed by vaginal rape, and blood was found in her rectum. Samples were collected and sent for DNA analysis.

The Appellant's fingerprint was found on the knife, and DNA testing of an anal swab and [the victim's] pantyhose matched the DNA of the Appellant. Several weeks later, [the victim] discovered she was HIV-positive, and testing revealed that the Appellant, who had not worn a condom during the rapes, was also HIV-positive.

State v. Quincy Bryan Banks, No. M2007-00545-CCA-R3-CD, Davidson County, slip op. at 2-3 (Tenn. Crim. App. April 11, 2008), app. denied (Tenn. Aug. 25, 2008).

This court affirmed the Defendant's convictions but remanded for resentencing, stating that

because Banks was sentenced under provisions of the June 7, 2005 sentencing amendments for crimes committed in November 2004, without a waiver of his ex post facto protections as required by statute, remand for a new sentencing hearing is required. Furthermore, because the sentencing record fails to demonstrate the requisite considerations for the imposition of consecutive sentencing, the case is also remanded for reconsideration of that issue and for entry of corrected judgment forms in accordance with this opinion.

Quincy Bryan Banks, slip op. at 1. On remand, the Defendant did not execute an ex post facto waiver and was resentenced pursuant to the pre-2005 sentencing law to twenty years' confinement for each conviction. The kidnapping conviction was again ordered to be served consecutively to the rape convictions, for an effective forty-year sentence. On appeal, this court held that the trial court again failed to make the factual findings necessary to impose consecutive sentences and remanded for resentencing, stating:

This court previously determined that the trial court did not make the findings to support a "dangerous offender" basis for consecutive sentencing, and clearly no further findings in that regard were made upon remand.

. . .

We surmise from this court's opinion in Quincy Bryan Banks that, at the time of the defendant's original sentencing in this case, multiple cases of aggravated robbery were pending against him and that the possibility of a series of offenses was of concern to the court in imposing consecutive sentencing. As we pointed out, however, constitutional restrictions upon the pre-2005 sentencing law allowed judge-enhancement of sentences only when other criminal conduct had resulted in a conviction (unless the factual basis for such were admitted by the accused), and apparently at the time of the original sentencing the charges of aggravated robbery had not resulted in convictions. Although the constitutional restrictions upon the trial court's setting the length of the defendant's sentence under the pre-2005 sentencing law do not apply to the determinations of consecutive sentence alignment, see State v. Allen, 259 S.W.3d 671, 688 (Tenn. 2008), the trial court on remand in this

case did not make any findings that the defendant committed the aggravated robberies; neither did it find that the charges had resulted in convictions.

We also infer that the trial court, in characterizing the defendant as dangerous, may have originally been concerned about the defendant's knowing infection of the victim with the HIV virus. This court, however, pointed out that the trial court did not make a finding that the defendant knew about his HIV infection at the time the offenses were committed against the victim.

All in all, with respect to the issue of consecutive sentencing, we remain in the same procedural posture we were in at the time of remand. . . . Accordingly, we vacate the portion of the amended judgments that calls for consecutive sentence alignment, and we remand the case for the trial court to conduct such further sentencing hearings as either party may request and to make its findings in conformity with applicable law.

State v. Quincy Bryan Banks, No. M2009-00421-CCA-R3-CD, Davidson County, slip op. at 8-9 (Tenn. Crim. App. April 14, 2010).

The parties did not request a hearing on remand and did not present additional proof. The Defendant did not execute an ex post facto waiver and was resentenced pursuant to the pre-2005 sentencing law to twenty years' confinement for each conviction. The kidnapping conviction was again ordered to be served consecutively to the rape convictions, for an effective forty-year sentence. With regard to the consecutive sentence, the trial court found that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The trial court stated:

The type of crimes committed in this case are inherently brutal in nature, as evinced from the physically and emotionally traumatic injuries inflicted upon the Victim. The fact that the Defendant utilized a knife and threatened the Victim with her life in this case weighs heavily in favor of determining that he is in fact a dangerous offender.

-5-

The trial court noted that although no proof was presented to establish that the Defendant knew he had HIV before committing the crimes in this case, the Defendant's infecting the victim with HIV added to its determination that the Defendant was a dangerous offender because this court "did not explicitly rule out consideration of Defendant's infection of the Victim with HIV as an element in determining that he is a dangerous offender by causing great bodily harm to the victim." The trial court also noted that the Defendant pled guilty to two counts of aggravated robbery before being resentenced.

The trial court found that consecutive sentencing was reasonably related to the severity of the crimes because the crimes were brutal in nature and caused the victim to suffer permanent physical, psychological, and emotional damage. The court found that consecutive sentencing was necessary to protect the public from further criminal acts by the Defendant because the Defendant was also convicted for threatening victims with a knife during a robbery and because "the fact that the Defendant is HIV-positive and has been convicted of violent sexual offenses is of great concern to the public safety." This appeal followed.

The Defendant contends that the trial court erred by ordering consecutive sentences. He argues that a twenty-year sentence is sufficient to protect the public and that the trial court's reliance on his use of a weapon and infecting the victim with HIV during the crimes was improper because aggravated rape already contemplates that a weapon was used or that the victim suffered bodily harm. The State contends that the sentences were properly imposed pursuant to Tennessee Code Annotated section 40-35-115(b)(4) (2003) and that the Defendant failed to show that the trial court abused its discretion in imposing a partially consecutive sentence. We agree with the State.

We note that the Defendant's offenses occurred in 2004. Because the Defendant did not sign a waiver to be sentenced under the amended sentencing statute, our review is based upon the pre-2005 version of the Sentencing Reform Act.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d) (2003). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that a defendant "is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). To support the consecutive sentencing of a dangerous offender, the proof must also establish that "the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). The decision to impose concurrent or consecutive sentences is a matter left to the discretion of the trial court. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App.1997) (citing State v. James, 688 S.W.2d 463 (Tenn. Crim. App. 1984)).

The Defendant has failed to cite any authority to support his contention that his infecting the victim with HIV and use of a weapon during the crimes did not support the trial court's finding that he was a dangerous offender. This court has upheld the imposition of consecutive sentences when a defendant was found to be a dangerous offender based on the use of a weapon and the circumstances of an aggravated rape. See State v. Baker, 956 S.W.2d 8, 18 (Tenn. Crim. App. 1997); see also State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. Aug. 27, 1991) (holding that a defendant's use of deadly weapons and death

threats to accomplish a previous offense, as well as the instant offenses of rape and aggravated kidnapping, supported consecutive sentencing).

The Defendant has not shown that the partially consecutive sentences imposed by the trial court were improper. The record reflects that the Defendant grabbed the victim, placed a knife to her throat, threw her to the floor, and raped her multiple times at knifepoint. He repeatedly told the victim that he would kill her if she did not comply with his demands. The Defendant's actions caused the victim to suffer permanent physical and psychological harm. In addition to this violent crime, the Defendant has committed other crimes while brandishing a knife. The Defendant's dangerous nature is reflected by his repeated use of deadly weapons while committing crimes. This evidence supports the trial court's finding that the criteria provided in Tennessee Code Annotated section 40-35-115(b)(4) and Wilkerson were applicable in the Defendant's case and that consecutive sentencing was proper. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE