# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs February 13, 2013

## STATE OF TENNESSEE v. KEVIN GROSS

**Appeal from the Criminal Court for Macon County**
**No. 07-188      Jane Wheatcraft, Judge**

_____

**No. M2012-01111-CCA-R3-CD - Filed February 21, 2013**

_____

A Macon County jury convicted the Defendant, Kevin Gross, of criminal responsibility for facilitation of burglary and theft of property. The trial court sentenced the Defendant as a persistent offender to concurrent terms of four years and eight years, respectively, in the Tennessee Department of Correction. On appeal, the Defendant argues that the trial court erred in ruling that, if the Defendant chose to testify, the State could use his prior conviction for burglary of an automobile to impeach his testimony under Rule 609 of the Tennessee Rules of Evidence. After thoroughly reviewing the record and applicable authorities, we find that the trial court did not err when it ruled that the State could impeach the Defendant with his prior conviction for burglary of an automobile. Accordingly, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

A. Russell Brown, Lafayette, Tennessee, for the appellant, Kevin Gross.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Tom P. Thompson, District Attorney General; and Tom Swink and Javin Cripps, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant's participation in the burglary of a small engine repair shop in Lafayette, Tennessee. In relation to this burglary, a Macon County grand jury indicted the Defendant for burglary[1] and theft of property valued between $1,000 and $10,000.

## A. Motion in Limine

Prior to the Defendant's trial, the State filed a notice of its intent to impeach the Defendant with six prior criminal convictions, which included convictions for burglary, pursuant to Rule 609 of the Tennessee Rules of Evidence. The Defendant filed a motion in limine, arguing that the use of any of his prior burglary convictions would be unfairly prejudicial. The trial court held a hearing on the Defendant's motion, ruling that the State would be allowed to cross-examine the Defendant, if he took the witness stand, on the fact that his criminal record contained six felonies. The State, however, could not specifically cross-examine the Defendant on the nature of those convictions because the prejudicial effect would be too great.[2]

On the day of the Defendant's trial and before the jury entered the courtroom, the trial court once again addressed the Rule 609 issue at the request of the Defendant's counsel. The following transpired between the trial court and defense counsel:

THE COURT: Are we ready to bring the jury in?

[DEFENSE COUNSEL]: For the record, did the Court want to make that ruling on 609, please.

THE COURT: Yes. Everyone be seated. Hold off on the jury for a minute. Based on the discussion that we had the other day about the prior offenses – well, let me start again. This Defendant has six prior

---

[1] The judgment form for this count contained in the record states that the charge was amended to "Criminal Responsibility for Facilitation of Burglary (other then Habitation)."

[2] The record before this Court includes neither the transcript for the trial court's initial hearing on the Defendant's motion in limine nor the trial court's order on the matter. Therefore, this Court relies on the details the trial court provided on the record on the day of trial regarding its prior ruling on the issue as well as the information provided in the briefs of the parties.

felonies and we had a discussion about whether or not they would come in under Rule 609.

I made a ruling at that time that the fact that he had six prior convictions for the exact crime with which he's on trial today, the prejudicial effect of that was so great that I was not going to allow it. I did rule that I would allow the District Attorney to cross examine him if he takes the witness stand for credibility purposes about the fact that he has six felonies, but not specifically what they were.

I have been presented at the break with a case that the Supreme Court ruled that you cannot ask the Defendant such a generic question because then it would force the jury to speculate on what those felonies were. So, apparently the Court has to make an all or nothing rule.

One of the convictions apparently is for an auto burglary, and I have told the State that it can cross examine for impeachment purposes as to an auto burglary. It's sufficiently different, I think, that it would give the State the opportunity to attack credibility but it wouldn't be so prejudicial that it would amount to propensity evidence. So that was the ruling that I made during the break and I want it on the record for appellate purposes. [Defense counsel], do you want to supplement the record in any way?

[DEFENSE COUNSEL]: Just note my objection to the fact that the Court is going to allow any prior burglary conviction to be used under 609 to impeach him.

### B. Trial

James Lee Holland, the victim and owner of a small engine repair shop, testified that he had owned his business since 1980 and that he also sold chainsaws and buck stoves in his shop. On June 18, 2007, at approximately 5:00p.m., Holland checked all of the doors and made sure everything was locked before he closed his business for the day. Holland recalled that the next morning he received a phone call from a worker at Jay's Grill, a nearby restaurant, who told him that a customer reported seeing the back door of Holland's shop open. When Holland arrived at his shop, he noticed that the front door was locked and that none of the front windows were broken. Once Holland went inside the shop, however, he noticed that the restroom window in the back of the shop had been broken with a large brick and the back doors were open. After taking inventory of his shop, Holland discovered that twelve of his chainsaws and five chainsaw bars were missing. Holland then called the city police. Holland stated that, two to four weeks after the incident, he picked up the chainsaws from the police station after the police had recovered them.

During cross-examination, Holland agreed that, upon recovery of his items, the chainsaws were unused and not damaged. Holland stated, however, that police did not recover the five missing chainsaw bars. Regarding the police investigation, Holland agreed that he did not see police dust for fingerprints in his shop.

Jaymi York, the girlfriend of the Defendant's cousin, Tyler Hinson, testified that she met the Defendant shortly before this incident. On the day of the incident, she was at the Defendant's apartment "shooting methamphetamines." She stated that, in addition to the Defendant, Tyler Hinson, Jimmy Brown, Thomas Sampson, and Martha Sampson were at the apartment "doing meth." At some point during the evening of June 18, the Defendant began talking about how he needed money to pay bills and buy more methamphetamine, mentioning that he could steal an ATM machine. When one of the other people mentioned Holland's shop, the Defendant announced that he planned to break into the shop to steal chainsaws. The Defendant, Thomas Sampson, Tyler Hinson, and Jimmy Brown then left the apartment. York stated that they were gone for a few hours while she remained at the apartment to use drugs.

York testified that, later that evening, the Defendant and the other men returned to the Defendant's apartment with eleven to thirteen chainsaws. When York asked the Defendant how he and the other men obtained the chainsaws, he told her that they "threw a rock through the window [of Holland's shop] . . . got a tool or something and busted out the rest of the glass and pushed [Hinson] in [through the window]." Once Hinson was inside the building, he opened the back door, and the rest of the men entered the shop.

York testified that, after spending a short time at the Defendant's apartment, the men again left. The Defendant left with Hinson to trade two chainsaws for more

-4-

methamphetamine. The other two men took the remaining chainsaws out of the apartment in order to hide them. The Defendant and Hinson later returned to the apartment without the two chainsaws, but they had seven grams of methamphetamine.

York stated that she did not initially report information regarding the burglary to the police. Rather, she first told a resident of Red Boiling Springs, Doug McDonald, that she had information about the burglary. Then, after Hinson assaulted her, she reported details of the assault and burglary to the police.

On cross-examination, York stated that she was twenty-three and started using drugs at age fifteen; however, at the time of trial, she had not used drugs for a year. York admitted that she had recently been charged with theft, but she clarified that she "made full restitution and it was dismissed" from her record.

Michael Colter, a friend of the Defendant, testified that on June 18 the Defendant and Hinson came to his house and asked him if he would be interested in purchasing a chainsaw. When Colter declined the offer, the Defendant asked him if they could pawn the chainsaw to him. Colter agreed to give the Defendant and Hinson a loan of $100.00. In exchange, the Defendant left the chainsaw with Colter and agreed to pay him $125.00 when he came back for the chainsaw in two weeks.

On cross-examination, Colter stated that, when the Defendant and Hinson came to his house, Hinson held the saw. He also stated that, after he handed the Defendant the money, he thought he saw the Defendant hand Hinson "something" as they walked away from Colter's house.

Martha Sampson, wife of Thomas Sampson and friend of the Defendant, testified that, late on the evening of June 18, 2007, the Defendant, along with Jaymi York, Jimmy Brown, and Tyler Hinson, came to her house, spoke with her husband, and brought two chainsaws into the house. Sampson testified that her husband later informed her that five additional chainsaws were placed in the trunk of her car because the Defendant "needed a safer place for them." Sampson stated that she found out about the chainsaws in the trunk of her car only a couple of days before police arrested her husband. After her husband was arrested, Sampson's mother called the police, and Chief Jerry Dallas came to the house to talk with Sampson and collect the chainsaws.

On cross-examination, Sampson agreed that, at the time of the incident, she had used methamphetamine. She agreed that her husband worked as a logger and purchased oil, chains, and parts from Holland on a regular basis. She also admitted that, at the time of trial, she had been charged with selling drugs.

Jerry Dallas, Chief of Police for the Lafayette Police Department, testified that he received a phone call from Holland regarding an incident at his shop. Chief Dallas sent another detective, Officer Jason Roberts, to Holland's shop to take the initial report. Chief Dallas stated that, on June 24, he received a phone call from Chief Terry Tuck of the Red Boiling Springs Police Department, informing him that York had information about the burglary of Holland's shop. Based on the information from York, Chief Dallas located and questioned Thomas Sampson. He also attempted, unsuccessfully, to locate the Defendant and Hinson that day. The next morning, Martha Sampson's mother called the police station and informed Chief Dallas that her daughter wanted to discuss details of the burglary with him. Chief Dallas met with Martha Sampson, and she told him that seven of the missing chainsaws were located on her property. Chief Dallas took possession of the chainsaws.

Later that evening, Chief Dallas located the Defendant and Hinson and brought them to the police station for questioning. Although the Defendant denied any responsibility for the burglary, he stated that Hinson brought one of the chainsaws to his apartment on June 19. Chief Dallas stated that he later recovered the remaining chainsaws from Hinson's residence and Colter's residence.

On cross-examination, Chief Dallas agreed that the initial investigating officer, Officer Roberts, took a photograph of a footprint found in Holland's shop. Chief Dallas agreed that the footprint was never matched to any of the suspects and further agreed that police did not dust for fingerprints at the crime scene.

Based upon this testimony, the jury convicted the Defendant of criminal responsibility for facilitation of burglary and theft of property. The trial court sentenced the Defendant to four years for the facilitation of burglary offense and eight years for the theft offense, to be served concurrently.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it determined that, should the Defendant have chosen to testify, the State would be allowed to impeach him with his prior conviction for burglary of an automobile. Specifically, the Defendant argues that the trial court failed to completely address the relevance of his prior conviction for burglary of an automobile, pursuant to Rule 609 of the Tennessee Rules of Evidence, and that, due to the similarity of his prior conviction to the charged offense, the use of his prior conviction was unfairly prejudicial. The State argues that the trial court properly concluded that, should

the Defendant have chosen to testify, the State could impeach the Defendant with his prior conviction. We agree with the State.

As an initial matter, the record before this Court does not include a transcript of the hearing on the Defendant's motion in limine concerning the issue of the State's use of the Defendant's prior conviction. We note that defendants have a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal" and will enable the appellate court to decide the issues. Tenn. R. App. P. 24(a); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999).

> It is well-established that an appellate court is precluded from considering an issue when the record does not contain a transcript or statement of what transpired in the trial court with respect to that issue. Moreover, the appellate court must conclusively presume that the ruling of the trial judge was correct, the evidence was sufficient to support the defendant's conviction, or the defendant received a fair and impartial trial. In summary, a defendant is effectively denied appellate review of an issue when the record transmitted to the appellate court does not contain a transcription of the relevant proceedings in the trial court.

*State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). Normally, when a defendant fails to provide a complete record on appeal, this Court concludes that the defendant waived appellate review of the claim. *Id.* In this case, however, we determine that, because the trial court provided, on the trial record, details of the ruling it made at the prior hearing on the Defendant's motion in limine, we will address the merits of the Defendant's claim.

Pursuant to Rule 609, Tennessee Rules of Evidence, the credibility of the defendant may be attacked by presenting evidence of prior convictions if certain conditions are met. First, the State must give reasonable pretrial notice of the impeaching convictions. Tenn. R. Evid. 609(a)(3). Second, the convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Third, less than ten years must have elapsed between the defendant's release from confinement on the prior conviction and the commencement of the instant prosecution. Tenn. R. Evid. 609(b). Finally, the impeaching conviction's probative value on credibility must outweigh its unfair prejudice. Tenn. R. Evid. 609(a)(3).

This Court reviews the trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. *See State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999); *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). A trial court abuses its discretion only when it "'applie[s] an incorrect legal standard,

or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

Trial courts should engage in a two-prong analysis when determining if the probative value of the impeaching conviction is outweighed by its prejudicial effect. *Id*. Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." *Id*. (citations omitted). The mere fact that a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citations omitted). However, "[w]hen an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that, since the defendant committed a similar offense, he or she is probably guilty of the offense charged." *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999) (citations omitted).

A trial court should first determine whether the impeaching conviction is relevant to the issue of credibility. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). Tennessee Rule of Evidence 609 suggests that the commission of any felony is "generally probative" of a defendant's credibility. *Id*. The Tennessee Supreme Court, however, has rejected a per se rule that permits impeachment by any and all felony convictions. *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). A prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issues of the case. *Waller*, 118 S.W.3d at 371. To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or a false statement. *Id.*

If the trial court fails to engage in an explicit analysis under *Mixon* and Rule 609, then "the court's decision to admit or exclude a prior conviction is not entitled to deference by the reviewing court . . . [, and] we must independently determine the admissibility of the prior impeaching conviction based on the evidence presented." *State v. Lankford*, 298 S.W.3d 176, 182 (Tenn. Crim. App. 2008).

In the present case, prior to trial, the State notified the Defendant of its intent to use the Defendant's six prior criminal convictions for burglary for impeachment purposes, should the Defendant testify. On the day of trial, the trial court stated that it would revisit its previous ruling on the issue, in which the trial court disallowed evidence of the Defendant's prior burglary convictions because the "prejudicial effect . . . was so great." During the jury-

out hearing prior to commencing the Defendant's trial, the trial court amended its previous ruling, finding that, after examining the details of the prior convictions, the State could cross-examine the Defendant for impeachment purposes on only one of the Defendant's five prior convictions, the conviction for burglary of an automobile. The trial court stated that "[i]t's sufficiently different . . . that it would give the State the opportunity to attack credibility but it won't be so prejudicial that it would amount to propensity evidence." At trial, the Defendant chose not to testify.

Despite the brief record on appeal, it is clear that the trial court recognized the similarity between the Defendant's prior conviction for burglary of an automobile and the charge of burglary of a business for which he was on trial, realizing the potential for prejudice. The trial court, however, ruled that there was sufficient difference between the two offenses, allowing the State to use the burglary of an automobile conviction to attack the Defendant's credibility, should he testify at trial. The record demonstrates that the trial court followed all procedural requirements. Therefore, the sole issue for our determination is whether the trial court abused its discretion in allowing the State to impeach the Defendant with his previous auto burglary conviction. *See Mixon*, 983 S.W.2d at 675. This Court has previously held that the offense of theft is a crime involving dishonesty and is, therefore, highly probative of credibility. *Lankford*, 298 S.W.3d at 181 n.1 (citing *Baker*, 956 S.W.2d at 15). Although the Defendant's prior conviction involved an automobile burglary, it was a different type of burglary from the burglary offense for which he was tried and convicted in this case. *See id.* at 181 (citing *Mixon*, 983 S.W.2d at 674). We conclude that the trial court followed the procedure set forth by Rule 609 of the Tennessee Rules of Evidence and that it did not abuse its discretion in determining that, if the Defendant testified, the State would be permitted to impeach the Defendant with his prior auto burglary conviction. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based upon the foregoing authorities and reasoning, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE