IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 20, 2013 at Knoxville

**STATE OF TENNESSEE v. TIMOTHY AARON BAXTER**

**Appeal from the Circuit Court for Madison County**
No. 11-651     Donald H. Allen, Judge

**No. W2012-02555-CCA-R3-CD  -  Filed January 3, 2014**

The defendant, Timothy Aaron Baxter, appeals from his Madison County Circuit Court jury conviction of Class E felony failure to appear, *see* T.C.A. § 39-16-609, the result of which was a six-year sentence to be served in the Department of Correction.  On appeal, the defendant challenges the sufficiency of the evidence, the admission of hearsay evidence, the use of prior convictions to impeach the defendant as a witness, and the failure to suppress his pretrial statements recorded in a transcript of an earlier court appearance.  Discerning no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

Daniel Bryant, Jackson, Tennessee, for the appellant, Timothy Aaron Baxter.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Madison County Circuit Court grand jury charged the defendant with felony failure to appear for a trial court appearance held on June 13, 2011.

Pretrial, the defendant moved the trial court, inter alia, to exclude evidence of his prior criminal record and to suppress a transcript of his prior appearance in the trial court. The motion to exclude the prior criminal record was held in abeyance pending trial, and the motion to exclude the transcript was denied.

The defendant was convicted by a jury on August 9, 2012. The court sentenced the defendant to serve a term of six years in the Department of Correction for the Class E felony of failure to appear. The defendant filed a timely motion for new trial, and following the trial court's entry of an order denying the motion, the defendant filed a timely notice of appeal.

At trial, evidence showed that the defendant was charged with aggravated assault, that at arraignment he had been appointed counsel, and that he was on bond prior to the scheduled June 13, 2011 court appearance. The administrative assistant to Circuit Court Judge Roy Morgan, Judge Morgan's court reporter, and an assistant district attorney general all testified that they appeared in court for the defendant's arraignment on May 9 and for his scheduled court date of June 13, that the defendant appeared on May 9 but did not appear on June 13, and that after counsel was appointed on May 9 the court instructed the defendant to return to court on June 13, 2011. A capias for the defendant's arrest was issued on June 13, 2011. Generally, the witnesses remembered the defendant and recognized him at trial. The circuit court clerk made court calendars available to the public by placing a supply at the front desk of the clerk's office.

The court reporter introduced into evidence a transcript "of the arraignment of [the defendant] on May the 9th, 2011." She said she certified the transcript and exhibited it to her testimony. The transcript, as read in court by the reporter, showed that the defendant was sworn, that the court appointed the public defender to represent him, that counsel entered a not guilty plea for the defendant, and that counsel suggested June 13, 2011, as the next court date. The judge instructed the defendant to "[b]e back here then and keep in contact with your attorney." The reporter testified that the defendant's arraignment was typical of any arraignment.

The same court reporter also prepared a transcript of the court proceedings in Judge Morgan's court on June 13, 2011. The court admitted the transcript into evidence over the defendant's objection that it contained hearsay statements. In the transcript, Judge Morgan said that the defendant had "dealt with us before. He knows the timing." In the transcript of the June 13, 2011 proceeding, which began per the court's practice at 8:00 a.m., Judge Morgan called the case, and when the defendant did not answer, the judge said, "I'm going to hold that one aside, then." After conducting some other court business, the judge called the defendant's case again, and when he did not respond, the judge said, "[C]apias issued . . . . It's nine-fifteen. No show. Bond forfeiture commence. That concludes the arraignment list." The defendant's counsel then asked the court for the opportunity to call the defendant, stating, "I expected him to be here today." The judge mentioned that the defendant's co-defendant also did not appear and said, "I don't mind you trying to call him. He needs to get here. We'll note a capias. He's dealt with us before. He knows the timing."

-2-

The defendant testified and acknowledged his appearance at the arraignment on May 9, 2011. He said that, after the court appointed the public defender to represent him, the judge told him to step aside. He testified that the assistant public defender "pulled [him] aside and [sat him] down" and elicited "a couple minutes worth" of contact information from him. He said he had no further communication from the judge. He denied that he heard the court express a return court date. He said he scheduled an appointment with the assistant public defender and went to her office on June 10, 2011. The assistant public defender tendered a plea agreement, but the defendant told her, "I'm not taking a plea agreement. I want to go to trial. I'm innocent." The defendant testified that he asked for "discovery materials," prompting counsel to respond, "Well I'm going Monday to try to get that . . . ." The trial court then sustained the prosecutor's objection to this statement as hearsay. The defendant maintained that he had never before missed a court date and that he intended to contest the aggravated assault charge.

On cross-examination, the defendant testified that he did not know he was obliged to appear in court on June 13 because he was "sitting at a table, talking with the lady from the public defender's office." He denied that he was standing at the podium when the judge communicated the next court date, opining that the judge "might have given the court date to the public defender but it wasn't to me." He stated that he believed his counsel would inform him of his next appearance date. He agreed that he was charged with aggravated assault and was not in court on June 13, 2011. Upon further cross-examination, the defendant acknowledged prior convictions of possession of a weapon by a convicted felon, manufacturing methamphetamine, and theft.

*I. Sufficiency of the Evidence*

The defendant claims on appeal that the evidence was insufficient to support his conviction of felony failure to appear. He posits that the State failed to establish that he knowingly failed to appear in court on June 13, 2011, and argues that none of the State's witnesses testified that the defendant actually heard the trial judge on May 9, 2011, express the next court appearance date.

When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Tenn. R.App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters*, 137 S.W.3d 641, 654-55 (Tenn. Crim. App. 2003). Especially inimical to the defendant's claim is the well-rooted axiom that the appellate court neither re-weighs the evidence nor substitutes its

inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Also, the credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). The appellate court affords the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

In the present case, the defendant was charged with a violation of Tennessee Code Annotated section 39-16-609, which in pertinent part provides:

> (a) It is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person:
>
> . . . .
>
> (4) Has been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding or penal institution at a specified time or place;
>
> . . . .
>
> (b) It is a defense to prosecution under this section that:
>
> . . . .
>
> (2) The person had a reasonable excuse for failure to appear at the specified time and place.
>
> . . . .
>
> (e) If the occasion for which the defendant's appearance is required is a Class A misdemeanor or a felony, failure to appear is a Class E felony.

T.C.A. § 39-16-609.

Thus, the requisite mental element expressed in the proscriptive statute is knowing. Establishing the mental state of knowing "will usually depend on inference and circumstantial evidence." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). We hold that the State established the knowing element through circumstantial evidence that the

-4-

defendant was present and in audience when the arraignment court announced the next court date.

The evidence was clear that the defendant was in court on May 9, 2011, that he appeared before the judge at the podium, that he was appointed counsel, that he at some point provided contact information to the assistant public defender, that his counsel requested that the case be set for June 13, 2011, and that the court set the case on that date at 8:00 a.m. The factual issue presented is whether the defendant was occupied by the "lady" from the public defender's office when the announcement was made so that he did not hear the trial judge. Although the defendant testified that he was so occupied and that he did not hear the date announcement, the jury was free to reject this testimony. Witnesses testified to the practice of having an arraigned defendant stand at the podium with counsel when the instruction to reappear is made, but we note that no witness recalled actually seeing the defendant at the podium during this time. That aside, the transcript of the May 9 arraignment includes Judge Morgan's agreement to counsel's suggestion of June 13 as the next court date, followed by the judge's statement to "[b]e back here then and keep in contact with your attorney." This comment was necessarily directed to the defendant. In our view, the jury had a basis for inferring that the defendant knew to return to court on June 13, 2011.

*II. Hearsay Evidence*

In his next issue, the defendant claims on hearsay grounds that the trial court erred by admitting two statements contained in the transcript of the June 13, 2011 hearing. Specifically, the defendant is aggrieved that the court reporter was allowed to present to the jury: (1) Judge Morgan's statement, "He's dealt with use before. He knows the timing," and (2) the assistant public defender's statement, "I expected him to be here today." The State asserts that the first statement was not submitted to show the truth of the matter asserted and that the second statement was admissible via the hearsay exception for admissions of a party. The State alternatively argues that any error in admitting these statements was harmless.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules [of evidence] or otherwise by law." *Id.* 802. Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

The defendant made a timely challenge to both statements. As to the first statement, we are unpersuaded that Judge Morgan's comments therein have any relevance to the issues on trial other than to show the truth of the matter asserted. As such, the judge's comments were hearsay, and the State makes no claim that a hearsay exception applies.

Based upon the absolute terms of Rule 802, these comments were inadmissible.

That said, however, we hold that the admission of this evidence was harmless. The sense of the comments is to refer to the time of day the defendant was required to appear. Judge Morgan's court typically convened at 8:00 a.m. and did so on June 13, 2011. Judge Morgan called the case at that time, and the defendant was absent. The judge then put the matter "aside," recalled the case at about 9:15 a.m., and ordered the issuance of a capias. The judge was focused upon the time of the morning; he announced the time, "It's nine-fifteen." The defendant's counsel then spoke up to indicate surprise at the defendant's absence and asked for leave to call him, the intimation being that she needed more time for the defendant to arrive. In this context, Judge Morgan said, "He's dealt with us before. He knows the timing." We believe this comment reflects upon the defendant's knowledge that Judge Morgan's court convened at 8:00 a.m. and not any knowledge that he was to be present on June 13. We note that the jury heard testimony that the defendant had appeared on May 9, 2011, at 8:00 a.m., supplying a benign basis for the jury's understanding of the comment, "He's dealt with us before." Nothing about the court's practice or the defendant's "dealing" with it would suggest that the case would be set for a particular day as opposed to the time of day. Accordingly, we do not see that the judge's comment had any bearing upon the issues resolved by the jury.

Regarding the public defender's comment that she expected the defendant to be present on June 13, the State claims that the evidence was admissible via the party's admission exception to the hearsay rule.

Tennessee Rule of Evidence 803(1.2) provides:

> Admission by Party-Opponent. A statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement in which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship under circumstances qualifying the statement as one against the declarant's interest regardless of declarant's availability, or (E) a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy, or (F) a statement by a person in privity of estate with the party. An admission is not excluded merely because the statement is in the form of an

-6-

opinion. Statements admissible under this exception are not conclusive.

Tenn. R. Evid. 803(1.2).

As can be seen, Rule 803(1.2) presents two possibilities for using a party's attorney's statement as an admission of the party. Part (D) extends the hearsay exception to statements "by an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship." Tenn. R. Evid. 803(1.2)(D). Clearly, one's attorney is his agent, and on June 13, 2011, the assistant public defender who represented the defendant spoke on his behalf within her scope of duty. Admission pursuant to part (D), however, also requires that the statement be made "under circumstances qualifying the statement as one against the declarant's interest." *Id.* The attorney's June 13 statement that she expected him to be in court was in furtherance of the defendant's interests at that time and not against those interests. Thus, part (D) is inapt.

Part (C), however, is apt in the present case. We acknowledge that one's attorney, "merely by reason of his employment in connection with litigation, . . . has no power to affect his client by admissions of fact made out of court, and not given for the specific purpose of dispensing with proof of the facts admitted." *Helen D. McReynolds v. Larry J. McReynolds*, No. 01-A-019109-CV-00315 (Tenn. Ct. App., Nashville, Jan. 31, 1992) (quoting 7 Am. Jur. 2d, *Attorneys at Law* § 152, p. 209 (1980)). In *Helen D. McReynolds*, however, the court of appeals disqualified a lawyer's statement under part (C) only because the record in that case contained "no proof of [the lawyer's] authority on the subject of his statements," noting that "the general authority of an attorney hired for a specific purpose does not allow him to bind his principal by extra-judicial admissions." *Id*.

In the present case, however, the attorney's statement was not extra-judicial, and in any event, evidence showed the authority of the defendant's attorney on the subject of her statements.

The defendant's attorney was in court to represent the defendant on a scheduled appearance day. The defendant did not appear at the appointed time and was in peril of being arrested on a capias. Counsel attempted to intervene by suggesting that something unexpected had occurred and by seeking the opportunity to call the defendant. Under the circumstances at the time, the effort was made in the defendant's best interests and was well within the scope of duty of the attorney. We hold that the assistant public defender who represented the defendant and spoke for him on June 13, 2011, was a person "authorized by the party to make a statement concerning the subject," and accordingly her statement was an admission attributable to the defendant via the exception provided in Rule 803(1.2).

### III. Impeachment with Prior Convictions

The defendant next claims that the trial court erred by allowing him to be impeached with evidence of four prior convictions. The State counters that the court acted within its discretion and that, in the alternative, any error was harmless in light of the strength of the State's case.

The trial court allowed the State to impeach the defendant through use of a 2011 conviction of aggravated assault,[1] a conviction of possession of a weapon by a convicted felon, a 2001 conviction of manufacturing methamphetamine, and a 2001 conviction of theft of property valued at over $10,000. The trial court found that the theft conviction was less than 10 years old and allowed it based upon the nexus between theft and "dishonesty." The court also found that the weapon, methamphetamine, and assault convictions were less than 10 years old. Relative to these convictions, the court said,

> [T]he Court, weighing . . . these various felony . . . convictions, the probative value on the issue of credibility . . . finds that they certainly should be allowed to be asked for impeachment purposes. They're all felony convictions. The Court finds that their probative value on the issue of credibility outweighs any unfair prejudicial effect on the substantive issues in this case.

The impeachment of a witness is governed by Tennessee Rule of Evidence 609. In pertinent part, the rule provides as follows:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:
>
> (1) The witness must be asked about the conviction on cross-examination. If the witness denies having been convicted, the conviction may be established by public record. If the witness denies being the person named in the public record, identity may be established by other evidence.
>
> (2) The crime must be punishable by death or

---

[1]This conviction was the culmination of the aggravated assault that was pending when the failure to appear occurred.

imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

Tenn. R. Evid. 609.

Thus, to be eligible as an impeaching conviction, a prior felony conviction need not involve dishonesty. However, when the witness to be impeached is the criminal defendant, the court, upon request, must determine the admissibility of an eligible conviction by deciding whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." In making this determination, "two criteria are especially relevant." *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). First, the court must "analyze the relevance the impeaching conviction has to the issue of credibility" and "explain [the relevance] on the record," *id.*, and second, it must, "'assess the similarity

between the crime on trial and the crime underlying the impeaching conviction.'" *Id.* (quoting Cohen, Sheppeard, Paine, *Tennessee Law of Evidence* § 609.9 at 376 (3d ed.1995)).

On appellate review, a trial court's ruling on the admissibility of prior convictions for impeachment purposes is subject to reversal only for abuse of discretion. *See, e.g.*, *Mixon*, 983 S.W.2d at 674.

In the present case, all of the prior convictions allowed for impeachment purposes were for felonies. Regarding the theft, the trial court adverted to the nexus between theft and dishonesty. This court has recognized that prior convictions based upon theft crimes are probative of veracity and have high value as impeachment evidence. *See, e.g.*, *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App.1997); *State v. Miller*, 737 S.W.2d 556, 559-60 (Tenn. Crim. App. 1987); *State v. Hardison*, 705 S.W.2d 684, 686 (Tenn. Crim. App.1987); *see also State v Russell*, 382 S.W.3d 312, 314 (Tenn. 2012). Thus, allowing the use of the theft conviction was well within the trial court's discretion.

Regarding the use of the aggravated assault conviction, we note that, especially when the prior conviction of aggravated assault is dissimilar to the offense on trial, this court has tended to affirm a trial court's allowing the use of the conviction for impeachment purposes. *See State v. Joseph Darryl Taylor*, No. M2011-02754-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Nashville, Oct. 31, 2012) ("[W]e conclude that the trial court did not abuse its discretion in ruling admissible the evidence of the defendant's conviction of aggravated assault for use as impeachment during the present rape trial."); *State v. Courtney Watkins*, No. W2010-01851-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Jackson, Sept. 30, 2011) ("We agree with the trial court that any prejudicial effect of the prior conviction [of aggravated assault] did not outweigh its probative value [in a trial for especially aggravated robbery]."), *perm. app. denied* (Tenn. 2012); *State v. Jeffery Yates*, No. W2003-02422-CCA-MR3-CD, slip op. at 14-15 (Tenn. Crim. App., Jackson, July 21, 2005) (affirming the impeachment use of "the [d]efendant's five convictions of aggravated assault"); *State v. Michael Brady*, No. M1999-02253-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Nashville, Jan. 12, 2001) ("We find, therefore, that the trial court did not abuse its discretion in holding the [d]efendant's prior conviction for aggravated assault admissible for impeachment purposes."); *State v. Donald Wayne Marshall*, No. E1999-00922-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Knoxville, Feb. 18, 2000) ("Although the aggravated assault conviction is less probative on the issue of the defendant's honesty, it still reflects his inability to conform his conduct to the requirements of the law."). We have noted "that a conviction of aggravated assault implicates a crime of violence" and that convictions of violent felonies "'reflect on the moral character of a witness.'" *Joseph Darryl Taylor*, slip op. at 7 (quoting *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996)); *see also State v. Daniel Strong*, No. 88-82-III (Tenn. Crim. App., Nashville, April 12, 1989). In light of these cases,

we have no trouble in affirming the trial court's allowance of the aggravated assault conviction for impeachment purposes. We note also that the jury in the present case knew from other evidence about the aggravated assault charge that resulted in the impeachment conviction for that offense.

Relative to the conviction of manufacturing methamphetamine, in *State v. Waller*, 118 S.W.3d 368 (Tenn. 2003), our supreme court concluded that convictions for the possession, sale, manufacture, or delivery of illegal drugs do not involve dishonesty, *see id.* at 372, and, as such, are "only slightly probative" on the issue of credibility, *id.* at 373. The supreme court also concluded that before such convictions are used as impeachment evidence, the trial court must "carefully balance the impeaching conviction's relevance with regard to credibility against its unfair prejudicial effect on substantive issues." *Id.* at 373. Also, the crime of possession of a weapon by a convicted felon is not very suggestive of veracity; however, we know that this court has previously approved impeachment via a conviction for weapon possession. *See generally State v. Deadrick M. Pigg*, M2000-03056-CCA-MR3-CD (Tenn. Crim. App., Nashville, Nov. 27, 2001).

At bottom, we hold that the trial court did not abuse its discretion by admitting the manufacturing and weapon possession convictions. First, they are both felonies. Second, they bear no similarity to the offense on trial. Third, the issue of credibility was the paramount factual issue in the case. The defendant squarely put his credibility at issue by denying that he stood at the podium while he was instructed when to return to court. This controversy made evidence reflecting on his credibility "relevant to the case." *Courtney Watkins*, slip op. at 9 ("The key point of controversy in this case was whether the [d]efendant was the assailant; thus, his credibility was of paramount importance. Therefore, evidence reflecting on his credibility was relevant to the case, and its probative value significantly outweighed any possible prejudicial effect."); *see Jeffery Yates*, slip op. at 14-15 ("Here, the [d]efendant put his credibility squarely at issue because he took the witness stand and denied that he had been with Michael Key on the night of the aggravated robbery. The probative value of past actions of poor moral character became particularly important, therefore."); *Deadrick M. Pigg*, slip op. at 4 ("The trial court further stated that the credibility of the [d]efendant was especially important in the present case because Mr. Clark and the [d]efendant were the only individuals close enough to know the intimate details of the transaction. Based upon this finding, we cannot conclude that the trial judge abused her discretion in allowing the State to impeach the [d]efendant with his prior convictions."); *Michael Brady*, slip op. at 6 ("We further note that, like the defendant did in *Blevins*, the [d]efendant here 'made his credibility an important issue by denying any wrongdoing and asserting legitimate conduct.'").

We acknowledge that the trial court made only minimal comments about its

weighing the probative value against the prejudicial effect in addressing the three non-theft convictions. The applicable law, however, supports the trial court's exercise of discretion in allowing all convictions for impeachment purposes.

## IV. Suppression of Transcript

In his final issue, the defendant challenges the trial court's denial of his motion to suppress the transcript of the May 9, 2011 arraignment. The defendant bases his challenge on the constitutional right to avoid self-incrimination. *See* U.S. Const. Amend. V. He posits that he was in custody for purposes of the May 9 arraignment, that no one informed him of his right to remain silent, and that, accordingly, his responses to the judge's questions were elicited in violation of the principles of *Miranda v. Arizona*, 384 U.S. 436 (1966).

Other than generally citing to the Fifth Amendment and to *Miranda*, the defendant cited no authority in his brief to support this unusual proposition of law. For that reason, he has waived our addressing the issue. *See* R. Tenn. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). We note, in passing, that the utility of the May 9 transcript in the case now before us was not the defendant's statements contained therein but rather the statement Judge Morgan made *to* the defendant.

## V. Conclusion

No reversible error attends the trial court's entry of a judgment of conviction in this case, and we affirm the judgment.

_____
JAMES CURWOOD WITT, JR., JUDGE

-12-