IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2016

**STATE OF TENNESSEE v. JOSHUA LISHUN BREWER**

**Appeal from the Criminal Court for Hamilton County**
**No. 289202     Don W. Poole, Judge**

_____

**No. E2015-02178-CCA-R3-CD – Filed October 18, 2016**

_____

The Defendant, Joshua Lishun Brewer, entered a guilty plea to carjacking, a Class B felony, with an agreed-upon sentence of eight years and with the manner and method of service to be determined by the trial court. *See* T.C.A. § 39-13-404 (2014). The trial court ordered the Defendant to serve his sentence in confinement. On appeal, the Defendant contends that the trial court erred by ordering confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Brandy Spurgin (on appeal), Sam Moore (sentencing hearing), James W. Clements III (plea hearing), Chattanooga, Tennessee, for the appellant, Joshua Lishun Brewer.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Neal Pinkston, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the plea hearing, the State articulated the factual basis for the plea as follows:

[On] July 24th, 2013. . . Sara Camp and . . . Christopher Scott, advised that they were driving east on Igou Gap when she noticed a young black male wearing a red shirt laying partially in a ditch in the roadway, turned the vehicle around to check on the individual she saw lying down. When her and her boyfriend, Mr. Scott, exited the vehicle, three unknown black males rushed them with pistols. They were told to get away from the car, they complied

with those demands. They took Ms. Camp's keys, a cell phone and other items, and left in the vehicle.

Ms. Camp had an application on her phone whereby she could track the location of the phone. She had let police know this and they were able to track the phone to [a car at an address]. It was occupied by 5 black males, they discovered after a traffic stop. They located the victim's purse and iPhone in the vehicle.

. . . Apparently, [the Defendant] gave a statement to the police and whereby confessing to the carjacking, and they did locate a large amount of money on another individual . . . and apparently there was a large amount of money in Ms. Camp's car, she was a bartender . . . and she carried large amounts of cash in her billfold in her purse.

Defense counsel noted that the Defendant was entering a best interest guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and that the Defendant was a juvenile at the time of the offense.

At the sentencing hearing, defense counsel noted that the Defendant wished to withdraw his guilty plea. The court acknowledged the request but noted that the Defendant had changed his mind multiple times, that defense counsel had changed, and that the sentencing hearing had been reset several times. The court decided to proceed with the sentencing hearing and to provide the Defendant an opportunity to file a motion to withdraw his guilty plea before the judgment was entered.

The presentence report was received as an exhibit and reflected a lengthy juvenile record, including numerous violations of probation, terms in juvenile detention, and adjudications for carrying a weapon to school, simple assault, and aggravated assault. The Defendant's medical records stated that the Defendant had been diagnosed with a conduct disorder, major depression, a psychotic episode, and attention deficit hyperactivity disorder (ADHD). The Defendant and his aunt reported that the Defendant had been diagnosed with bipolar disorder. The report noted that the Defendant attempted to commit suicide as a juvenile. The Defendant reported cocaine and marijuana use from ages fourteen to sixteen.

Relative to the carjacking case, the presentence report included the following narrative from the affidavit of complaint written by the arresting officer:

On 7-24-2013 at 0042 hours, police were dispatched to a carjacking . . .
On arrival, Officer Mitchell located the victims Sarah Camp (vehicle owner)

-2-

and her boyfriend . . . who advised they were carjacked at gunpoint. Specifically Ms. Camp advised that she was traveling east on Igou Gap when she noticed a young black male wearing a red shirt laying partially in a ditch and the roadway. She turned the vehicle around to check on the person she saw lying down. When Ms. Camp and her boyfriend got out of her vehicle to check on the person three unknown black males rushed them with pistols. Both Ms. Camp and her boyfriend were told to "Get the f--- away from the car[."] Both Ms. Camp and her boyfriend complied with the suspects['] demands. The three parties that rushed up and the party that was lying in the ditch got into Ms. Camp['s] vehicle and fled the scene traveling west . . . . Police canvassed the area in an attempt to locate the suspects but to no avail. I was notified of this incident and responded to the scene where I spoke to the victim . . . . After clearing the scene I returned to my office. I was contacted by Ms. Camp's boyfriend at 0232 hour[s] and he advised me that they were tracking Ms. Camp's iPhone. I was able to put out locations over the police radio and with the assistance of patrol officers Ms. Camp's vehicle was located . . . and was occupied by five black males. One of the males was seen just getting into the vehicle by Officer Prater who made the traffic stop. This suspect was excluded as one of the suspects from the robbery. All five suspects were detained and I responded to the scene where I processed the vehicle for evidence. Inside the vehicle I located two pellet pistols, and the victim's purse and iPhone. The purse appeared to have been rummaged through. On suspect Janet[,] I located $812.00 cash and he could not explain to me where he [obtained it.] There was also clothing located on each suspect that was consistent with the suspect description. All suspects were transported to the police service center for questioning. Suspects Herman and Brewer confessed to the carjacking while suspect Jarrett denied the robbery and suspect Davis refused to talk. The victim's vehicle was released to her as [well as] her purse. I will be returning the cash that was recovered although it is short the original amount of $1100.00. Ms. Camp is a bartender and had a large amount of cash in small bills. The cash that was located on suspect Janet was 20's 10's 5's and 1's. All suspects were transported to JDU and charged with carjacking.

The presentence report noted that during the sentencing investigation, the Defendant was charged with possession of marijuana, possession of a firearm with intent to go armed, aggravated burglary of an occupied habitation, theft of property valued at more than $1,000, and aggravated robbery. The report included statements from the affidavits of complaint relative to the burglary and robbery arrests, as well as a narrative relative to an incident in

which the Defendant was found in a hotel room with two people and a gun.  The prosecutor noted for the trial court that the burglary charge had since been dismissed.

Melinda Ralston conducted the presentence investigation and testified that a charge of carrying a weapon to school could refer to an object that would not be classified as a weapon in criminal court.  Ms. Ralston stated that the Defendant had been diagnosed with bipolar disorder and ADHD.  Ms. Ralston said that the Defendant had previously taken mediation for his mental health issues but that when she interviewed the Defendant, he had been unable to contact his healthcare provider and, as a result, was not taking his medication.  Ms. Ralston thought that the Defendant had an open case with the Department of Children's Services (DCS) at the time of his arrest and that the Defendant had received "services or therapy" when he was in DCS facilities.

Chattanooga Police Officer Cornelius Gaines testified that on August 30, 2014, after the Defendant entered his best interest guilty plea but before the sentencing hearing, he went to a hotel at 3:00 a.m. to speak with the Defendant and "give him the VRI message."  Officer Gaines said that he and another officer knocked on the hotel room door, announced their presence, and stated they wanted to talk to the Defendant.  Officer Gaines stated that the Defendant cracked open the door, saw the officers, and slammed the door.  Officer Gaines said that he heard rustling and noise inside the hotel room, that the other officer walked to the back of the building and saw the Defendant trying to climb through a window, and that the other officer told the Defendant to return inside.  Officer Gaines stated that the Defendant opened the front door, that the officers entered to ensure "everything [was] okay," that a woman was asleep on a bed, and that a second man stood near the window with his hands raised and looked at the bed.  Officer Gaines said that he saw a gun on the bed within the second man's reach and that he found it suspicious the second man had his hands raised.  Officer Gaines stated that he detained the second man and escorted him from the room.

Officer Gaines testified that he asked the Defendant to step outside and told him they wanted to speak to him.  Officer Gaines said that the Defendant gave the officers written consent to search the room and that the only item recovered during the search was the gun lying on the bed.  Officer Gaines stated that the Defendant denied owning the gun and said it belonged to the other man.  Officer Gaines sent the gun and samples of both men's DNA to the Tennessee Bureau of Investigation (TBI) for analysis, and the TBI report reflected that blood on the gun matched the Defendant's DNA.  Officer Gaines stated that due to the Defendant's age, the Defendant was not permitted to obtain a handgun carry permit, that the serial number on the gun had been filed off, and that the Defendant was charged with the alteration of permanent numbers and unlawful possession of a firearm based upon his felony conviction in the present case.

Janice Hammonds, the Defendant's aunt, testified that she had been the Defendant's legal guardian since he was age twelve and that the Defendant's mother gave Ms. Hammonds custody of the Defendant because the Defendant's mother was suffering from mental health issues. Ms. Hammonds said that both of the Defendant's parents had been diagnosed with bipolar disorder, ADHD, and schizophrenia. Ms. Hammonds stated that the Defendant had been in "Cumberland Hall" and "Joe Johnson" at the time he came to live with her, that the Defendant had diagnosed mental health issues, that the Defendant received Social Security disability benefits, and that the Defendant's mother received the Defendant's disability checks. Ms. Hammonds said that the Defendant was bullied in school and that his mental health issues affected his school performance. She said that when the Defendant was younger, she found him beaten and bruised, that she asked the Defendant what happened, and that the Defendant told her "some guy jumped him," but he did not know who it was. She stated that the Defendant was sent to Cumberland Hall due to a fight between the Defendant and another boy in which the Defendant used scissors to "tr[y] to get the guy off of him" and that the Defendant initially was diagnosed with mental health issues at Cumberland Hall.

Ms. Hammonds testified that the Defendant had no contact with his mother and very little contact with his father. Ms. Hammonds said that the Defendant did not have friends, but he spent time with groups of people who got him into trouble because he did not think for himself. She described the Defendant as a "follower" who allowed other people to think for him and said that when he got into trouble, his "right mind is not thinking." Ms. Hammonds said that if the Defendant were granted probation, he would live with her, her mother, and the Defendant's grandfather. Ms. Hammonds said that she had spoken to the Defendant's father and that the Defendant's father wanted to help the Defendant change his life. Ms. Hammonds noted that she believed the Defendant's behavior stemmed from his being abused all his life.

Ms. Hammonds stated that her guardianship did not extend to taking the Defendant to medical appointments and that although the Defendant's mother took him to mental health appointments, his mother had not consistently sought help for the Defendant. Ms. Hammonds noted that the Defendant's mother had not attended any of the Defendant's court hearings since his legal troubles began in 2013. Ms. Hammonds said that if the Defendant lived with her, she would obtain help for him and that she had tried her best to raise the Defendant well. She stated that the Defendant was not a bad person, that he had completed anger management and GED classes at the jail, and that he was trying to change his life.

On cross-examination, Ms. Hammonds testified that she was familiar with the facts of the carjacking case, that the family combined resources to post the Defendant's bond after several months of confinement, and that two weeks after the Defendant entered his best interest plea, the police found the Defendant at a hotel with an "older lady and she had him

on drugs, had him sniffing cocaine and taking pills . . . I didn't understand why they would let her go." Ms. Hammonds said the police told her that the Defendant had been found with a gun. Ms. Hammonds stated that her mother posted the Defendant's bond and that at a court hearing on the weapon possession charge, the prosecutor charged the Defendant with several other offenses, including an aggravated burglary. Ms. Hammonds said that the burglary was eventually dismissed because the house belonged to the Defendant's girlfriend's mother, who allowed the Defendant to live there. Ms. Hammonds acknowledged that the Defendant was charged with an armed robbery that occurred on August 5, 2014, when he was living at the girlfriend's mother's house. Ms. Hammonds said that the family was planning to try to post the Defendant's bond again before the sentencing hearing and that they wanted the Defendant to live with them and wear a GPS tracking bracelet.

Defense counsel argued relative to the "stipulated incident, the facts" articulated at the plea hearing that the gun used during the carjacking was a toy, that the victims were not harmed, and that the Defendant was "the one with the least amount of agency [of the young men], given his functional state and his impairment when he's not properly medicated."

The trial court found that because the Defendant pleaded guilty to a Class B felony, he was not a favorable candidate for probation, although he was eligible for probation because carjacking was an eligible offense and his sentence was less than ten years. The court found that the circumstances of the offense included a person feigning injury, that the victims were good Samaritans, that although no one was injured, the victims were "terrorized to a certain extent," that guns or what the victims believed were guns were involved, and that anytime a carjacking occurred, a danger of harm existed. The court considered the presentence report and noted that the report was unfavorable to the Defendant. The court considered the testimony of the witnesses and the testimony regarding the incident in the hotel room after the Defendant pleaded guilty, as well as the purposes and principles of sentencing. The court did not consider the Defendant's pending charges.

Relative to mitigating factors, the trial court found that the Defendant's upbringing was "sad" and credited Ms. Hammonds's testimony about the Defendant's having been abused and bullied. The court found that the Defendant had mental health issues and that a "catch all" mitigating factor applied. *See* T.C.A. § 40-35-113(13) (2014).

Relative to enhancement factors, the trial court found that the Defendant had a history of criminal behavior, including behavior described in the presentence report and "severe marijuana and cocaine usage." *See id*. § 40-35-114(1) (Supp. 2012) (amended 2015, 2016). The court found that on multiple occasions, the Defendant was granted alternative sentencing in juvenile court and that on multiple occasions he violated the conditions of release. *See id*. § 40-35-114(8) (Supp. 2012) (amended 2015, 2016). The court found that the Defendant had

committed an aggravated assault as a juvenile which would have been a felony if he had been tried as an adult and that he engaged in criminal behavior two weeks after pleading guilty in the present case. *See id*. § 40-35-114(8), (16) (Supp. 2012) (amended 2015, 2016).

The trial court found that the Defendant had been expelled from high school and had caused unspecified problems in an alternative school, and that as a result, the Defendant's potential for rehabilitation was low. The court ordered the Defendant's sentence to be served in confinement. This appeal followed.

The Defendant contends that the trial court erred by ordering confinement. He argues that the evidence preponderated against the court's finding that he engaged in criminal behavior after he pleaded guilty. He also argues that the court erred by considering information in the presentence report when weighing the seriousness of the offense because the Defendant entered a best interest guilty plea and had not admitted to the State's version of the facts. Relatedly, he argues that the presentence report constituted hearsay and should have been excluded.

The State responds that the trial court credited Officer Gaines's testimony and that the evidence did not preponderate against the Defendant's having possessed a gun. The State also argues that Defendant waived the presentence report issue by failing to object to the report at the sentencing hearing. In response, the Defendant argues that defense counsel preserved an objection to the facts contained in the presentence report when he noted at the plea colloquy that the Defendant was entering a best interest guilty plea.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654.

Relative to the Defendant's argument regarding the trial court's finding that the Defendant possessed a gun, the Defendant challenges the credibility of Officer Gaines's testimony and contends that the court should have stated the burden of proof when finding that the event occurred. The State responds that the court credited Officer Gaines's testimony and that the court was not required to state the burden of proof.

Officer Gaines testified that he went to a hotel at 3:00 a.m. to speak with the Defendant, that the Defendant slammed the door when he saw the officers, that the officers heard noise coming from inside the room, that the other officer saw the Defendant trying to climb out a rear window, and that when the officers entered the room, they saw a gun on the bed. Officer Gaines said that the gun's serial number had been filed off and that although all the people in the room denied owning the gun, DNA from blood found on the gun matched that of the Defendant. The presentence report contained nearly identical information taken from the affidavit of complaint. Ms. Hammonds testified that the Defendant had been dating an older woman, that he had gone with her to a hotel, that the woman gave the Defendant drugs, and that the police told Ms. Hammonds the Defendant was found with a gun in the hotel room.

The trial court stated that it considered Officer Gaines's testimony and the contents of the presentence report in its sentencing determination and found that the Defendant had been in a hotel room with two people and a gun. The court implicitly credited Officer Gaines's testimony, parts of which were corroborated by Ms. Hammonds. Determinations of credibility are the province of the trial court, and we will not reweigh Officer Gaines's credibility on appeal. We note that the court had ample grounds upon which to base its decision to order confinement, including the Defendant's extensive juvenile record and multiple previous failed attempts at probation. The evidence does not preponderate against the court's finding that the Defendant possessed a gun. The Defendant is not entitled to relief on this basis.

Relative to the Defendant's argument that the trial court erred by considering facts contained in the presentence report when weighing the seriousness of the offense, the record reflects that the Defendant did not object at the sentencing hearing to the admission of the presentence report as an exhibit or to any of the report's contents. In addition, counsel's noting at the plea colloquy that the Defendant entered a best interest guilty plea was not equivalent to objecting to the State's version of the facts. The issue is waived. *See* T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

In any event, it is well established that reliable hearsay, such as a presentence report, is admissible during sentencing. *See* T.C.A. § 40-35-209 (2014) ("The rules of evidence shall apply [in sentencing hearings], except that reliable hearsay . . . may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted[.]"); *State v. Baker*, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997) . Furthermore, the trial court was required to consider the presentence report before imposing a sentence. T.C.A. § 40-35-210(b)(2) (2014) (amended 2017) (stating that during sentencing, the court "shall consider the . . . presentence report"). Therefore, the trial court properly relied upon information in the presentence report in making its sentencing determination. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____

ROBERT H. MONTGOMERY, JR., JUDGE